**Revised January 7, 1999**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 97-10307**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**


**VERSUS**


**JACK HUTCHINS HAESE,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

December 7, 1998

Before REYNALDO G. GARZA, JONES and DeMOSS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The appellant brings forth this appeal raising four issues: (1) whether he was denied effective assistance of counsel; (2) whether the district court erred in granting the government's Motion *In Limine*; (3) whether Haese was entitled to an evidentiary hearing based on his allegations of prosecutorial misconduct; and (4) whether the district court plainly erred in admitting testimony of the government's key witness in violation of 18 U.S.C. § 201(c)(2) because that testimony was

obtained in exchange for a favorable plea agreement.

## *I. Factual and Procedural Background*

Appellant, Jack Hutchins Haese ("Haese"), was Senior Vice President and Chief Lending Officer of Majestic Savings Association ("Majestic"), a federally insured financial institution, located in McKinney, Texas. Haese was responsible for analyzing problem loans, including those in default, and recommending workout transactions. Glen Hickman ("Hickman"), Majestic's president, and Joe Collins ("Collins"), the Majority owner of Majestic, consistently approved Haese's recommendations on problem loans. Haese, Hickman, and Collins were members of Majestic's commercial loan committee.

Mukesh Assomull ("Assomull") was employed by Craig Properties, a real estate brokerage investment company jointly owned by Assomull, David Craig and James Craig. Assomull was in charge of raising money for syndication and brokerage loans. Haese had earlier arranged a loan from Majestic for Assomull that involved property in Sherman, Texas. In exchange for receiving the loan, Assomull used $1 million of the loan proceeds to purchase property that was accounted for as real estate owned on Majestic's books.

Assomull represented Paul Yarbrough, Jr. ("Yarbrough"), Terry Rine ("Rine") and William Malish ("Malish"), the holders of a promissory note that was secured by 105 acres of land in Arlington, Texas. The maker of the note was Arlington 157 Tenancy in Common ("Arlington 157"). Arlington 157 had purchased the property encumbered by the note in 1985 for $8.5 million. As of August 1987, Arlington 157 owed $5,725,000 on the note, but Yarbrough, Rine and Malish were willing to sell it at a discounted price of $3.8 million.

2

Graconco, Inc. ("Graconco"), a Texas corporation owned and controlled by Burl and Joe Gray, owned the Old Towne Plaza Shopping Center ("Old Towne"), a project financed by Majestic. During the summer of 1987, Graconco was in default on its debt obligation to Majestic on the Old Towne property.

In a memorandum to Haese dated August 26, 1987, Assomull outlined the benefits to Majestic of financing the sale of the Arlington 157 note. As Assomull explained, the note could be financed for $5.4 million, but purchased for $3.8 million, leaving $1.6 million in excess equity. He suggested to Haese that the excess funds could be used for Old Towne, or any other situation Haese might think would work. Assomull was aware that Haese was looking at similar proposals at this time, and that Haese had to be paid a bribe if he wanted Majestic to finance the sale of the note. In addition, Haese and Assomull discussed that the bribe would be paid by increasing the brokerage commission due Craig Properties from $100,000 to $200,000 and remitting half of it to Haese. The money in question was paid into a corporation called Olympic Systems, which was wholly owned by Haese and his wife.

On September 17, 1987, Haese sent a letter to Yarbrough, Rine and Malish, copied to Assomull, which stated that Majestic intended to finance the purchase of the Arlington 157 note. Haese, Hickman and Collins, on behalf of the commercial loan committee, approved the issuance of a $5.7 million loan to Graconco on September 26, 1987. The loan approval sheet provided that the discounted proceeds would be applied to the outstanding principal balance of Graconco's loan for Old Towne. On October 14-15, 1987, the loan to Graconco in the amount of $5.7 million was closed at Majestic's offices. At closing, Craig Properties received a commission check in the amount of $200,000 and it was deposited into its account at Texas American Bank in McKinney, Texas.

3

Raymond Kane ("Kane") was General Counsel at Majestic during most of 1987 and represented the association in various legal matters. In April 1987, Kane and Haese formed Triad Capital Group ("Triad") for the purpose of purchasing saving and loan associations. At the closing of the sale of the Arlington 157 note, James Craig and Haese met with Kane and tendered him a check for $100,000 from Craig Properties, payable to Triad. When Haese failed to provide Kane with a satisfactory explanation as to the origins of the $100,000, Kane decided to tear up the check. The next day, Haese explained to Kane that the money originated from a debt Assomull owed to Haese and that Assomull made out the check payable to Triad. Kane replied that any money Haese was owed by Assomull should not be paid to Triad, since there was no debt owed to the corporation and it looked "like a bribe." Kane advised Haese on several additional occasions that it would be improper to accept any payment from Assomull because it looked like a bribe.

A few days after the closing, Haese suggested that Assomull temporarily deposit his $100,000 payment in another account in order to disguise the source of the payment. On October 19, 1987, Assomull transferred the funds from Craig Properties into the account of Shalimar Properties, Inc., an inactive corporation owed by Assomull and the Craigs which held an account at Texas American Bank. Thereafter, Haese instructed Assomull to wire $100,000 from the Shalimar account to Union Bank ("Union") in San Antonio to the attention of Grant Hollingsworth ("Hollingsworth"), the President of Union, and to purchase a $100,000 certificate of deposit in Shalimar's name with the money.

On November 2, 1987, Haese sent a letter to Hollingsworth and requested that Union issue a $100,000 loan to Olympic Systems secured by Shalimar Properties' certificate of deposit. On November 3, 1987, Haese signed a promissory note and security agreement for a $100,000 loan to

Olympic Systems from Union. James Craig pledged the Shalimar certificate of deposit as security for the loan.

On November 10, 1987, $95,000 of the proceeds of the loan were transferred to a checking account opened at Union in Olympic's name. The remaining $5,000 was wire transferred into the account of Jack and Wilma Haese at Murray Savings Association in Dallas, Texas. On December 29, 1987, the Shalimar Properties certificate of deposit was cashed and the proceeds used to repay the loan to Olympic.

On diverse dates between November, 1987 and September, 1988, checks totaling almost $70,000 made payable to either Haese or his wife were written on Olympic Systems account at Union and deposited into their personal accounts.

In order to prove its facts, the government relied upon two witnesses: Assomull, who testified pursuant to a plea agreement requiring his cooperation; and Kane, the former counsel for Majestic, who testified under a grant of immunity.

On January 23, 1992, after a jury trial in the United States District Court for the Northern District of Texas, Haese was convicted on one count of conspiracy to commit bank bribery, to unlawfully participate in a bank transaction, and commit money laundering in violation of 18 U.S.C. § 371; one count of bank bribery in violation of 18 U.S.C. § 215; one count of unlawful participation in a bank transaction in violation of 18 U.S.C. § 1006; and one count of money laundering in violation of 18 U.S.C. § 1956 (a)(1)(B)(I). On November 6, 1992, the district court sentenced Haese to a term of 33 months imprisonment, plus a term of supervised release of three years. Haese's trial counsel failed to perfect an appeal.

On April 22, 1995, Haese filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255,

in which he alleged that (1) his counsel provided inadequate representation at trial and failed to file an appeal; and (2) the government engaged in prosecutorial misconduct by knowingly presenting perjured testimony and interfering with Haese's right to compulsory process. The magistrate judge, to whom Haese's motion was referred, set the motion down for evidentiary hearing on Haese's ineffective assistance of counsel claims.

On November 25, 1996, the magistrate judge found that Haese's failure to perfect an appeal was due to ineffective assistance of counsel and that he should be allowed an out-of-time appeal. Having found that Haese was entitled to relief on his claim of ineffective assistance of counsel for failure to file an appeal, the magistrate judge declined to reach Haese's claims of ineffective assistance of counsel relating to the trial itself. The magistrate judge held that the other claims raised in the motion may be presented on direct appeal. On March 19, 1997 the district court adopted the magistrate judge's findings *in toto*. This appeal followed.

## *II. Discussion*

### Ineffective assistance of counsel

This Circuit generally does not allow claims for ineffective assistance of counsel to be resolved on direct appeal when those claims have not been presented before the district court, since no opportunity existed to develop the record. *United States v. Brewster*, 137 F.3d 853, 859 (5th Cir.), *cert. denied*, 119 S.Ct. 247 (1998). Furthermore, we do not typically review these claims on direct appeal because the record is rarely sufficiently developed on the issue of attorney competence. *United States v. Martinez*, 143 F.3d 914, 917 (5th Cir. 1998), *petition for cert. filed*, (U.S. Sept. 8,

6

1998) (No. 98-6016). Thus, the record must allow us to evaluate fairly the merits of the claim. *United States v. Navejar*, 963 F.2d 732, 735 (5th Cir. 1992).

This Court concludes that we are competent to determine the validity of Haese's claims, because the district court conducted an evidentiary hearing on these claims. Therefore, we deny his request that this case be remanded to the district court for rulings on his claims of ineffective assistance of counsel and unrelated trial error. Haese encourages this Court to adopt the Ninth Circuit's approach in resolving the issues before us. In *Robbins v. Smith* 125 F.3d 831 (9th Cir. 1997), the Ninth Circuit held that it was an error for a district court to grant habeas corpus relief under 28 U.S.C. § 2254 in the form of an out-of-time direct appeal without also ruling on the petitioner's claims of constitutional error at his trial. The court stated that if the district court ruled in petitioner's favor on the claims of trial error, the need for a direct appeal would be obviated. However, this Court declines to adopt the Ninth Circuit's approach and reasoning.

To demonstrate a valid claim for ineffective assistance of counsel, thereby justifying the reversal of his conviction, Haese must satisfy both prongs of the *Strickland* test. First, Haese must show that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "This requires showing that the counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the defendant must show the deficient performance prejudiced the defense." *Id.*

In addressing the first prong of the *Strickland* test, whether counsel's assistance was deficient, we must determine whether the attorney's assistance was reasonable in light of all the circumstances. *Id.* Because of the inherent difficulties in making this evaluation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;

7

that is, the defendant must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

If Haese can show that his counsel's assistance was deficient, he must then prove the second prong of the *Strickland* test. To prove that the ineffective assistance of counsel prejudiced his defense, Haese "must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Pratt v. Cain*, 142 F. 3d 226, 232 (5th Cir. 1998) (quoting *Strickland*, 466 U.S. at 694). A "reasonable probability" is a probability to undermine confidence in the outcome of the proceeding. *Id*. Thus, the second prong focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Haese argues that his counsel provided ineffective assistance by failing to present an enormous amount of testimonial and documentary evidence that would have impeached the government's key witnesses and supported his theory of defense. The government, however, asserts that this evidence fails to support the ineffective assistance of counsel claims. After hearing oral argument and reviewing the parties' briefs and the record, this Court finds that the government's contention is correct. We therefore hold that Haese has failed to sufficiently prove both prongs of the *Strickland* test.

## Motion *In Limine*

This Circuit reviews a district court's exclusion of evidence for an abuse of discretion. *Guillory v. Domtar Industries Inc.*, 95 F.3d 1320, 1329 (5th Cir. 1996). Furthermore, if this Court finds an abuse of discretion in the admission or exclusion of evidence, we review the error under the

8

harmless error doctrine. *United States v. Skipper*, 74 F.3d 608, 612 (5th Cir. 1996). Finally, we must affirm evidentiary rulings unless they affect a substantial right of the complaining party. *Id.*

The government filed a pretrial Motion *In Limine* to exclude evidence that Haese had cooperated with the Federal Home Loan Bank Board ("FHLBB") and the FBI in connection with financial transactions unrelated to those charged in the indictment. The district court granted the motion. Haese maintains that the district court abused its discretion in granting the government's Motion *In Limine*. We hold that the district court did not abuse its discretion.

Haese asserts that the government failed to understand the purpose for which he offered proof of his cooperation with government officials. Haese maintains that the evidence was not offered to demonstrate his good character, but rather, to show his innocent state of mind and lack of criminal intent in the very transaction at issue. Haese contends that this is permitted under FED. R. EVID. 404(b). The government correctly notes that this Court has previously ruled that a defendant may not use specific acts circumstantially to prove lack of intent. *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir.), *cert. denied*, 498 U.S. 1000 (1990). This tactic attempted by Haese is not only disfavored, it is not permitted. *Id.*

Haese suggests that this case is similar to *United States v. Lowery*, 135 F.3d 957 (5th Cir. 1998). In *Lowery*, we reversed the defendant's conviction because the district court granted an overly-broad Motion *In Limine* and excluded relevant exculpatory evidence essential to the theory of defense. The overly-broad motion left the defendant with his hands tied. This is clearly not the situation in this case.

**Evidentiary hearing**

A district court's failure to conduct an evidentiary hearing is reviewed for abuse of discretion. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)**.** It is well established "that a conviction obtained through false evidence, known to be such by representatives of the State, must fall under the [due process guarantee]." The same occurs when the State, although not soliciting false evidence, permits it to go uncorrected upon its appearance. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Thus, a defendant's convictions must be reversed on due process grounds where the government knowingly elicits, or fails to correct, materially false statements from its witnesses. *See United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989). In order to establish a *Napue* violation, the defendant must show (1) the statements in question are actually false; (2) the prosecution knew that the statements were false; and (3) the statements were material. *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997), *cert. denied*, 188 S.Ct. 1525 (1998).

Haese first asserts that the government knowingly used perjured testimony in securing his conviction and is therefore entitled to an evidentiary hearing. The government notes that this is contrary to Haese's position during the section 2255 hearing. In addition, the government maintains that Haese is in the same position that he would have been if his counsel had filed a timely appeal and attacked his original conviction. Thus, he would not have been entitled to an evidentiary hearing under such circumstances and is not entitled to a hearing now.

The government contends that although Assomull and Kane testified inconsistently it does not demonstrate that one of them lied. It correctly notes that in a similar situation such contradictions were found to be at most, representative of a conflict in the testimony of the two witnesses. *United States v. Miranne*, 688 F.2d 980, 989 (5th Cir. 1982), *cert. denied*, 459 U.S. 1109 (1983). In

10

addition, the credibility of witnesses and weight to be given to their testimony are generally questions within the province of the jury. *United States v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 1998). Moreover, the government maintains that even if one of the witnesses has perjured himself, Haese has failed to support this claim with evidence that the government had knowledge of the perjury. This Court agrees with the government and we find that the district court did not abuse its discretion in denying Haese an evidentiary hearing.

Secondly, Haese argues that he is entitled to an evidentiary hearing regarding his claim that the government intentionally issued a target letter to James Craig on the eve of trial in order to intimidate him from testifying in Haese's defense. Haese asserts that this violated his due process rights. The government, however, contends that Haese is not entitled to an evidentiary hearing even if the district court had considered his claim as part of his section 2255 petition because the government's actions were not designed to intimidate Craig. The government states that Craig's name was not on a list of proposed witnesses. Therefore, the letter was sent without any knowledge that Haese wanted to call Craig as a witness or to stop Craig from testifying for Haese.

The Sixth Amendment guarantees an accused individual the right to present his own witnesses to establish a defense. *United States v. Weddell*, 800 F.2d 1404, 1410 (5th Cir. 1986). We have held that "substantial government interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant . . . [and that] . . . [i]f such due process violation occurs, the court must reverse without regard to prejudice to the defendants.'" *Id*. (quoting *United States* v. *Goodwin*, 625 F.2d 693, 703 (5th Cir. 1980)). We conclude that Haese has not been denied due process and an evidentiary hearing was properly refused.

11

**18 U.S.C. § 201(c)(2)**

Ordinarily, the district court's admission of evidence is reviewed for abuse of discretion. *United States v. Rogers*, 126 F.3d 655, 657 (5th Cir. 1997). Furthermore, this Circuit reviews questions of statutory interpretation *de novo*. *United States v. Marmolejo*, 89 F.3d 1185, 1188 (5th Cir. 1996), *cert. granted in part*, *Salinas v. United States*, 117 S.Ct. 1079 (1997), *and aff'd,* 118 S.Ct. 469 (1997). No objection was made in the court below, thus in the absence of a proper objection we review for plain error. *See* FED R. CRIM. P. 52(b); *see United States v. Manges*, 110 F.3d 1162, 1176 (5th Cir. 1997), *cert denied*, 188 S.Ct. 1675 (1998). In order to redress errors to which there was no objection at trial, this Court must ascertain: (1) that there was an error; (2) the error was plain; (3) the error affects substantial rights; and (4) if not corrected, the error would seriously affect "the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 731-32 (1993).

Haese asserts that the testimony of the government's key witness, Assomull, violated 18 U.S.C. § 201(c)(2) and should have been suppressed because he testified pursuant to a favorable plea agreement. Haese's contention, however, is meritless.

Section 201(c)(2) prohibits the giving, offering or promising anything of value to a witness for or because of his testimony. Haese relies upon *United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998) *reh'g en banc granted*, *opinion vacated*, (10th Cir. July 10 ,1998). In *Singleton*, the court found that the prosecutor violated section 201(c)(2) and reversed the defendant's conviction based upon an accomplice's testimony at trial under a cooperation agreement. *Id.* at 1359-61. The accomplice agreed to testify truthfully in return for leniency, including the possibility of a 5K1.1 motion by the government. *Id.* at 1344. This Circuit, however, has rejected the applicability of the

*Singleton* court's holding. *United States v. Webster*, 1998 U.S. App. Lexis 30718, *137-39 (5th Cir. Dec. 3, 1998). "[T]his circuit's precedents shows . . . that we consistently have upheld government efforts to provide benefits to witnesses in exchange for testimony. . . ." *Id*. In addition, no other jurisdiction has adopted *Singleton*, and even the Tenth Circuit vacated the decision pending rehearing en banc.

This Circuit, once again, refuses to adopt *Singleton*'s reasoning and holding. This Court has stated that "no practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence." *United States v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987), *cert. denied*, 484 U.S. 1026 (1988). The First Circuit has correctly noted that frequently the most knowledgeable witnesses available to testify about criminal activity are other co-conspirators. *United States v. Dailey*, 759 F.2d 192, 196 (1st Cir. 1985); *see United States v. Reid,* 1998 WL 481459, at *3 (E.D.Va. July 28, 1998). Often, there are situations where these individuals are the only credible witnesses, and without the ability to use their testimony the government would not be able to obtain a conviction. *Id.* Moreover, this essential "right on the part of the prosecutor to make promises of leniency in exchange for testimony is as old as the institution of the criminal trial." *Id.* In addition, affording leniency to cooperating accomplices dates back to the common law of England and has been recognized and approved by the United States Congress, the United States Courts and the United States Sentencing Commission. *United States v. Barbaro*, 1998 WL 556152, at *3 (S.D.N.Y. Sept. 1, 1998); s*ee also United States v. Laureano*, 1998 WL 696006, at *1 (S.D.N.Y. Oct. 7, 1998).

Unlike the *Singleton* court, it is evident to this Court that Congress did not intend for section

13

201(c)(2) to be used when prosecutors offer lenity for a witness' truthful testimony. To interpret section 201(c)(2) in any other way would apply shackles to the government in its pursuit to enforce the law. *See United States v. Hammer*, 1998 WL 725211, at *17 (M.D.Pa. Oct. 9, 1998) (noting that the *Singleton* opinion makes a criminal out of nearly every federal prosecutor, accomplices out of district judges, suppresses highly relevant evidence and cripples the enforcement of federal criminal law).

Two courts have followed *Singleton's* flawed rationale. *United Stated v. Fraguela*, 1998 WL 560352, at *2 (E.D.La. Aug. 27,1998)(concluding that section 201(c)(2) "does and should apply to prosecution plea bargaining"); *United States v. Lowery*, 15 F.Supp.2d 1348, 1359-60 (S.D.Fla. 1998) (finding that suppression of co-defendant's testimony is the appropriate remedy for a violation of section 201(c)(2) and to deter unlawful prosecutorial conduct). These courts are incorrect and this Circuit will not follow down a path that will throw our criminal system into disarray.

Although *Fraguela* and *Lowery* were misguided by the *Singleton* court, numerous courts dealing with the application of section 201(c)(2) have refused to accept its rationale.[1]

---

[1] *United States v. Sargent*, 1998 WL 544412, at *1 (8th Cir. Aug. 25, 1998)(concluding that there was no plain error in allowing conspirator's trial testimony and rejecting defendant's argument that the district court should have found the trial testimony unreliable because it resulted from a plea agreement); *Hammer*, 1998 WL 725211, at *17 (stating that "[t]he *Singleton* panel's conclusion that prosecutors commit a federal criminal offense when they engage in the common practice of offering lenity for a witness' truthful testimony was an extreme and radical departure from history, practice and established law."); *Reid*, 1998 WL 481459, at *3 (holding that a reading of section 201(c)(2) that includes government attorneys would work "obvious absurdity" and that the general words of the statute do not include the government or affect its rights); *United States v. Guillaume*, 13 F.Supp.2d 1331, 1333 (E.D.Fla.1998)(finding that Congress, in enacting section 201(c)(2), clearly intended to exclude plea agreements between a defendant and a prosecutor); *United States v. Arana*, 18 F.Supp.2d 715, 718-21 (E.D.Mich. 1998)(concluding that the application of section 201(c)(2) to federal prosecutors in their negotiation and execution of plea agreements would create an absurdity. The government cannot be deemed to violate this section when it enters into a Rule 11 agreement based upon the defendant's cooperation because it is simply a request that the court take certain

14

To apply section 201(c)(2) to the government in this case is "unsound, not to mention nonsensical, especially in its creation ex nihilo of an exclusionary rule barring testimony from virtually every cooperating federal witness."[2] *Eisenhardt*, 10 F.Supp.2d at 521. Therefore, we must reject Haese's

action); *Barbaro*, 1998 WL 556152, at *3 (denying defendant's motion to suppress any testimony to be offered by government witnesses who have been offered or promised anything of value in return for testimony); *United States v. Mejia,* 1998 WL 598098, at *1 (S.D.N.Y. Sept. 8, 1998)(rejecting the *Singleton* court's rationale); *United States v. Juncal*, 1998 WL 525800, at *1 (S.D.N.Y. Aug. 20, 1998)(rejecting that section 201(c)(2) is violated when an accomplice agrees to testify truthfully in return for leniency, including the possibility of a 5K1.1 motion by the government); *United States v. Szur*, 1998 WL 661484, at *1 (S.D.N.Y. 1998)(denying a new trial, or in the alternative, for a judgment of acquittal, in reliance on *Singleton*); *United States v. Eisenhardt*, 10 F.Supp.2d 521, 521-22 (D.Md.1998)(concluding that defendant's guilty plea to the offense of conspiracy was not tainted and induced by the fact that various potential witnesses against him were co-conspirators who had been given or promised favorable treatment in exchange for their testimony); *United States v. Moore*, 1998 WL 778073, *4-5 (N.D.Ill. Nov. 2, 1998)(finding that *Singleton's* holding and reasoning is contrary to Seventh Circuit precedent); *United States v. Duncan*, 1998 WL 419503,*1 (E.D.La. July 15, 1998)(refusing to follow the *Singleton* decision because it is no longer the law); *Nero v. United States*, 1998 WL 744031, at *1 (E.D.Pa. Oct. 23, 1998)(noting that "a promise or prospect of a § 5K1.1 motion in return for testimony which the government deems to be truthful and of substantial assistance does not violate the bribery statute or otherwise entitle a defendant to set aside his conviction or sentence"); *United States v. Dunlap,* 17 F.Supp.2d 1183, 1187 (D.Colo.1998)(concluding that it would be inconsistent with the "congressionally authorized practice of plea agreements that provide for leniency to defendants in exchange for cooperation to hold that Congress intended to criminalize such agreements in 18 U.S.C. § 201(c)"); *United States v. Crumpton,* 1998 WL 764804,*1-2 (D.Colo. Oct. 30, 1998)(adopting *Dunlap*'s rationale); *United States v. Gabourel,* 9 F.Supp.2d 1246, 1247 (D.Colo.1998)(refusing to find a violation of section 201(c)(2) where the government promised a cooperating witness that she would not be prosecuted in connection with the case in exchange for her testimony); *United States v. White*, 1998 WL 758830, at *2 (E.D.N.C. Oct. 14, 1998)(recognizing that section 201(c)(2) is inapplicable to government plea agreements that are designed to encourage witnesses to testify against other criminal defendants); *United States v. Nieves*, 1998 WL 740835, at *1 (D.Conn. Oct. 13, 1998)(rejecting the reasoning of *Singleton* and stating that section 201(c)(2) does not apply to the government because it is not expressly included within the statute's scope); *United States v. Revis*, 1998 WL 713229, *19 (N.D.Okla. Oct. 8,1998)(concluding that section 201(c)(2) did not prohibit the government's plea agreements where it followed specific procedures mandated by the law).

[2]Judge Smalkin notes that "the chances of either the Fourth Circuit and the Supreme Court reaching the same conclusion as the *Singleton* panel are, in this Court's judgement, about the same as discovering that the entire roster of the Baltimore Orioles consists of cleverly disguised leprechauns." *Eisenhardt*, 10 F.Supp.2d at 521-22. This Circuit agrees with Judge Smalkin's comical

contention that 18 U.S.C. § 201(c)(2) is violated when testimony is obtained in exchange for a favorable plea agreement. Thus, we hold that the district court did not err in allowing Assomull's testimony.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's decisions and Haese's requests for relief are DENIED.

---

illustration.  We also feel that the likelihood of our knowledgeable colleagues on the Supreme Court finding as the *Singleton* panel's absurd holding is nonexistent.