**UNITED STATES of America**

v.

**Damen EVERETT.**

**No. 2:98–CR–60–1.**

United States District Court,
D. Vermont.

Jan. 28, 1999.

Thomas D. Anderson, Sheehey, Furlong, Rendall & Behm, Burlington, VT, for Damen Everett.

John M. Conroy, Asst. U.S. Atty., Office of the United States Attorney, Burlington, VT, for United States of America.

## OPINION AND ORDER

SESSIONS, District Judge.

Defendant Damian Everett seeks to exclude introduction of statements made to law enforcement agents at the time of his arrest on May 15, 1998. He also seeks to exclude witnesses who were offered promises of leniency by the government, pursuant to *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998), *vacated, reh'g granted,* 144 F.3d at 1361, *rev'd,* 165 F.3d 1297, 1298 (10th Cir.1999).

## I. MOTION TO SUPPRESS STATEMENTS

On May 15, 1998, law enforcement officers obtained and executed a search warrant issued by Vermont District Court Judge James Crucetti for an apartment at 16 Pitkin Street in Burlington, Vermont. DEA Agent Richard Carter knocked on the apartment door, announcing that law enforcement officers were present to execute a search warrant. After hearing movement in the apartment, the officers broke down the door and entered. Approximately seven officers were present. The officers found two individuals in the living room, at that time identified as Peter Papalardo and Dante Miller. Miller was later identified as Damen Everett. Both subjects were ordered to lie down on the floor and were handcuffed with their hands behind their backs.

After the officers conducted a preliminary search of the residence, they separated Everett and Papalardo. Papalardo was taken into the kitchen and questioned. He exercised his *Miranda* rights and all questioning ceased.

Within three to five minutes of entry into the apartment Detective Donald Lilja of the Burlington Police Department took Everett into the bedroom. Detective Lilja has been a police officer for the City of Burlington for 15 years, and has been assigned to the DEA Task Force for the past thirty months.

Everett sat on the edge of a bed while being questioned. Lilja began the interview by informing Everett that the officers were executing a search warrant to look for drugs. Lilja then told Everett that he needed to understand his rights. Officer Glynn gave Lilja a standard *Miranda* card, a copy of which was introduced as Government Exhibit 2. Lilja read the *Miranda* rights to Everett directly from the card. While the rights were being read, Everett asked Lilja whether he would have to answer every question, to which Lilja responded no. Everett stated that he did understand each of his rights and was willing to be questioned. Everett then signed the acknowledgment and waiver of rights portions of the form. Everett continued to insist that he was Dante Miller and signed the form by using that name. At all times during the reading and waiver of rights, the tone of the conversation was calm and Everett was cooperative.

It is unclear whether Everett was handcuffed when he waived his rights. Lilja had either removed the handcuffs from behind his back and re-handcuffed him with hands in front, or removed them entirely. Eventually, the handcuffs were removed, since Everett specifically asked that the handcuffs be placed on him again before he was taken from the apartment.

Other law enforcement officers witnessed Lilja's reading of the *Miranda* rights and Everett's execution of the waiv-

er. Agent Carter remembers seeing Lilja read from the card and hearing Everett say he understood his rights. Carter also saw Everett sign the card. Detective Charles Cole also observed Lilja read from the *Miranda* card and heard the defendant express his willingness to speak.

Everett made several incriminating statements to Lilja, including acknowledging that he was a heroin addict. Lilja told Everett Detective John Lewis of the Burlington Police Department would join in the interview. Everett then indicated he had a criminal record under the name of Damen Everett. When Lewis joined the discussion, they talked about how Everett could cooperate. Lewis then transported Everett to the Burlington Police Station for further interrogation. Prior to leaving the apartment, Everett asked that he be put in handcuffs so that Papalardo would not suspect he was cooperating with police.

Lilja decided to re-advise Everett of his *Miranda* rights at the Burlington Police Department, primarily because the initial *Miranda* card had been signed under a false name. Lilja read the *Miranda* form to Everett, who acknowledged understanding his rights. Unfortunately, the form used by the Burlington Police Department at that time was somewhat ambiguous. Paragraph 7 of the form asked in essence whether the defendant agreed to waive his rights and speak with the officer. However, the answer section is preceded by the question "Do you understand your rights?" When the defendant answered "yes," it was unclear to the officer whether that meant that Everett understood his rights or whether he also intended to assert his rights. Lewis asked if Everett wanted to speak to them without a lawyer and he responded affirmatively.

Shortly after the warrant was executed, Lilja discovered that he had lost the initial *Miranda* card that Everett had signed in the apartment. Lilja and other officers conducted a thorough and fruitless search for the card.

At all times, Everett appeared cooperative with police while being interviewed. He affirmatively waived his *Miranda* rights. He never asked to speak with a lawyer or asserted a wish to remain silent or to stop the questioning.

■ The Court finds based upon the totality of circumstances that Lilja read the *Miranda* rights to Everett in the bedroom at 16 Pitkin Street prior to questioning, and that Everett clearly understood and waived those rights. At no time did Everett say or do anything which could in any way be construed as an assertion of his rights to an attorney or to remain silent. His waiver was knowingly and voluntarily made. Consequently, Everett's motion to suppress statements made to law enforcement officers on May 15, 1998 (paper 21) is DENIED.

## II. PROMISES OF LENIENCY UNDER *UNITED STATES V. SINGLETON*

Everett seeks to exclude any testimony procured in violation of 18 U.S.C. 201(c)(2), including evidence provided by witnesses who received offers of leniency from the Government in return for their cooperation. Everett relies upon a recent opinion from a panel of the Tenth Circuit, *United States v. Singleton*, 144 F.3d 1343 (10th Cir.1998), *vacated, reh'g granted*, 144 F.3d at 1361, *rev'd*, 165 F.3d 1297, 1999 WL 6469 at *1 (10th Cir. Jan.8, 1999). In *Singleton*, the panel found the Government violated the federal bribery statute by offering a USSG § 5K1.1 motion for downward departure in return for a witness' cooperation, and ordered suppression of the witness' testimony. The panel's opinion was promptly vacated sua sponte by the Tenth Circuit and the case was recently reversed.

The *Singleton* panel decision has likewise been rejected by the other circuit courts which have addressed the issue. *See United States v. Haese*, 162 F.3d 359 (5th Cir.1998) (citing *United States v. Web-*

ster, 162 F.3d 308 (5th Cir.1998)); *United States v. Ware*, 161 F.3d 414 (6th Cir.1998) (section 201(c)(3) does not apply to government). In unpublished opinions, the district courts within this circuit have refused to adopt *Singleton*'s reasoning. *See United States v. Jennings*, No. 5:98–CR–418, 1998 WL 865617 at *6 (N.D.N.Y. Dec.8, 1998); *United States v. Masciandaro*, No. 97 CR 305(SHS), 1998 WL 814637 at *1 (S.D.N.Y. Nov.19, 1998); *United States v. Romero*, No. 97 CR 650(LMM), 1998 WL 788799 at *4 (S.D.N.Y. Nov.10, 1998); *United States v, Nieves*, No. 3:97CR238 (ANN), 1998 WL 740835 at *1 (D.Conn. Oct.13, 1998); *United States v. Laureano*, No. 97 CR 0741(HB), 1998 WL 696006 at *1 (S.D.N.Y. Oct.7, 1998); *Cancel–Hernandez v. United States*, No. CV 98–4252(RR), 1998 WL 846824 at *2 (E.D.N.Y. Oct. 5, 1998); *United States v. Szur*, No. S5 97 CR 108(JGK), 1998 WL 661484 at *1 (S.D.N.Y. Sept.24, 1998); *United States v. Juncal*, No. 97 CR 1162(JFK), 1998 WL 525800 at *1 (S.D.N.Y. Aug.20, 1998).

■ Decisions rejecting the *Singleton* opinion rely both upon statutory interpretation and historical precedent. As a matter of statutory interpretation, general words of a statute do not include the government or affect its rights and obligations unless the text of the statute expressly includes the government. *Nardone v. United States*, 302 U.S. 379, 383, 58 S.Ct. 275, 82 L.Ed. 314 (1937). Section 201(c)(2) of Title 18 does not refer to the government in any way. Furthermore, the Supreme Court has repeatedly confirmed the prerogative of the executive branch to engage in plea bargaining. *See Ricketts v. Adamson*, 483 U.S. 1, 9 n. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (approving plea agreements as bargained-for exchanges, citing *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)); *Bordenkircher v. Hayes*, 434 U.S. 357, 361–62, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (guilty plea and plea bargain important components of criminal justice system);

*Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (plea bargaining essential component of administration of justice); *Brady v. United States*, 397 U.S. 742, 751–52, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (plea bargaining mutually advantageous to defendant and prosecution); *Whiskey Cases*, 99 U.S. 594, 599, 25 L.Ed. 399 (1878) (well established that accomplice may achieve freedom from prosecution by testifying against associates).

■ The Court rejects the *Singleton* panel's reasoning. The federal bribery statute does not apply to the government and the plea bargaining process. Witnesses who are offered promises of leniency by the government in return for their testimony are not excluded from testifying at trial. Everett's Motion to Adopt the Rule of *Singleton* (paper 23) is DENIED.

## III. MOTION TO SUPPRESS EVIDENCE SEIZED IN EXECUTION OF THE SEARCH WARRANT

Vermont District Court Judge James Crucetti issued a search warrant for 16 Pitkin Street in Burlington, Vermont on May 15, 1998. Everett claims the warrant was not supported by probable cause and that its execution violated the Fourth Amendment.

■ This Court must give the magistrate who issued the warrant substantial deference. *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir.1993). To uphold a warrant, a court need only find "that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). The magistrate's task is to make a "practical, common-sense" determination whether, under the totality of circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a

particular place." *Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. 2317.

■ The Court finds that the affidavit submitted by Detective John Lewis provided a substantial basis for Judge Crucetti's finding of probable cause that evidence of drug activity existed at 19 Pitkin Street. Detective Lewis had extensive experience in investigating illegal drug activity, including involvement in over 200 such investigations in Burlington. Judge Crucetti could give considerable weight to Detective Lewis' experience and conclusions. *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985) (agent's expert opinion important factor in reviewing warrant application). *See also United States v. Lawson,* 999 F.2d 985, 987 (6th Cir.1993).

Lewis had received information from a number of individuals outlining Everett's involvement in distributing heroin from 13 Murray Street and 16 Pitkin Street. A confidential informant told Lewis that Everett lived at 16 Pitkin Street and had sold him heroin. That informant's statements were corroborated in a number of ways, including his recitation that other distributors had been arrested while returning from New York City with a supply of heroin. Matthew Walton confirmed Everett's involvement in distributing heroin. Neighbors' concerns for the high level of traffic in and out of Everett's apartment was another factor lending credibility to the informant's statements. Finally, Detective Lewis' experience that drug traffickers often leave drug supplies and records of drug transactions within their residences is a significant factor in warranting Judge Crucetti's finding of probable cause.

■ Even if the Court were to find no substantial basis for a finding of probable cause, the good faith exception under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) applies to this case and bars exclusion of the evidence. Under *Leon,* provided an officer executes a warrant with an objectively reasonable belief in its legality, evidence obtained pursuant to the warrant is not subject to the exclusionary rule. *Id.* at 922, 104 S.Ct. 3405. Here, Lewis clearly had an objectively reasonable belief that the warrant was supported by probable cause, and the good faith exception applies.

For the reasons stated above, Everett's Motion to Suppress Search Warrant Evidence (paper 24) is denied.

## IV. SUPPLEMENTAL MOTION TO SUPPRESS STATEMENTS

Everett seeks to suppress statements he allegedly made to DEA Agent Thomas Doud during execution of the search warrant at 16 Pitkin Street on May 15, 1998. Everett complains that the Government failed to produce Everett's statements to Doud until November 13, 1998, three days before the scheduled hearing on his motion to suppress. He seeks exclusion of the statements as a sanction for the late disclosure.

During DEA Agent Doud's participation of the search of Everett's residence, he asked the Defendant a number of questions and elicited a number of incriminating statements. Soon after the search, Doud prepared a rough draft of Form DEA–6 which detailed Everett's statements. The report was not completed. Doud had informed Detective Lilja about much of the substance of Everett's statements, which Lilja then included in his reports. Shortly before the suppression hearing in November, AUSA John Conroy asked Doud to complete the Form DEA–6. Doud completed the form on November 12, 1998 and it was forwarded to Everett on the following day.

The Court has already ruled Everett freely and voluntarily waived his Miranda rights. Doud's interviews with Everett occurred after the waiver, and there is no evidence that Everett told Doud he wished to exercise any of his constitutional rights. Thus the statements were not taken in violation of Everett's Fifth Amendment rights.

Rule 16(a) of the Federal Rules of Criminal Procedure requires the Government to disclose "the substance of any relevant oral statement" made by the defendant to law enforcement agents. Included within the report filed by Detective Lilja and given to the Defendant in the normal course of discovery were a number of statements made to Doud, including Everett's admission that heroin found in the apartment belonged to him and that he knew of Western Union payments to Papalardo. The discussion between Doud and Everett concerning the Defendant's identity and his knowledge of New London, Connecticut were also disclosed in Lilja's report. The disclosures comport with the requirements of Rule 16(a).

Furthermore, in the exercise of their broad discretion to remediate discovery violations, courts will not employ the sanction of suppression for a Rule 16 violation that was not made in bad faith and did not result in prejudice to the defendant. *See United States v. Miller*, 116 F.3d 641, 681 (2d Cir.1997). In this case, Doud's failure to complete his DEA–6 was due to neglect and did not amount to bad faith. The case was originally investigated by state authorities, and Doud was merely assisting in execution of the warrant. He was not the lead investigator, nor was he responsible for assisting the United States Attorney's Office in its prosecution. Once he completed the DEA–6, it was immediately surrendered to the defense. Given these facts, the Court finds the Government did not exercise bad faith in the delayed surrender of Doud's DEA–6.

Everett has not been prejudiced in any way by the lateness of the disclosure. The disclosure took place well in advance of trial, in fact, before a trial date was set. Everett has had ample opportunity to review the statement, to investigate the facts surrounding its making, and to object to the statement's admission.

For the reasons cited above, the Court DENIES the supplemental motion to suppress (paper 31).