**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 98-4256

TROY LAMONT CHEESE,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Charles H. Haden II, Chief District Judge.
(CR-97-155)

Submitted: February 4, 1999

Decided: February 16, 1999

Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed; remanded for correction of the judgment by unpublished
per curiam opinion.

_____

**COUNSEL**

Thomas N. Cochran, Assistant Federal Public Defender, Greensboro,
North Carolina, for Appellant. Rebecca A. Betts, United States Attor-
ney, John L. File, Assistant United States Attorney, Charleston, West
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Troy Lamont Cheese (Cheese) appeals his conviction for conspiracy to distribute cocaine base, in violation of 21 U.S.C.A. § 846 (West Supp. 1998). He was sentenced to 324 months imprisonment and a $12,500 fine. Cheese challenges his conviction and sentence, and we affirm.

I

Cheese was indicted on one count of a four-count indictment. He and several codefendants were named as coconspirators in a conspiracy to distribute and possess with intent to distribute cocaine base, lasting from at least February 1997 to August 1997. The conspiracy began with conversations between brothers Troy and Wendell Cheese (Wendell), who lived in Beckley, West Virginia, and their cousin Dion Cheese (Dion) and his friend, Doug Hill, who lived in New Jersey. Cheese and Wendell encouraged Dion and Hill to bring their drug business to Beckley. Cheese and Wendell had previously used Dion as a supplier of drugs, and had taken the drugs back to Beckley to sell.

Dion and Hill came to Beckley in February 1997, bringing about seventy grams of cocaine base. Dion and Hill gave a portion of this amount to Cheese, Wendell, and Christie Brandon, who was Wendell's girlfriend. These three sold the drugs to people they knew in Beckley, and paid Dion and Hill a percentage of the return. When the drug supply ran out, approximately every two weeks, Dion, Hill or Wendell traveled to New York to get more. Each time, thirty to one hundred grams were brought back to Beckley. After each trip, Cheese received a portion of the new supply to sell. At some point, Dion decided that Wendell could not be trusted to sell the drugs because of his personal use. At that point, Wendell was cut out of the arrange-

2

ment and Brandon took up more of his sales. This procedure was followed until Dion and Hill were arrested in late August 1997.

During the course of the conspiracy, Cheese spent eighty-four days in jail on an unrelated charge. After his release, he continued to sell drugs and be part of the conspiracy. Law enforcement officers made several controlled buys from Dion, Brandon, and Wendell. Cheese was present during one of these transactions.

During an interview with police, Cheese at first denied his involvement in selling drugs, but soon admitted that he had been selling crack cocaine for Dion and Hill since February. Cheese recanted this admission at a suppression hearing and during trial.

Dion, Hill, Wendell, and Brandon all pled guilty pursuant to plea agreements prior to Cheese's trial. They each testified at the trial about the conspiracy and Cheese's role in it. The plea agreement for each witness was introduced into evidence, and defense counsel cross-examined each witness about the anticipated benefits from his or her testimony.

II

Cheese asserts that the jury was chosen in violation of 28 U.S.C. § 1862 (1994), in that the jurors were not chosen from a fair cross section of the community. Of the forty-four prospective jurors, none was black.

In a criminal case, a challenge to the procedure used in jury selection must be made before voir dire begins or within seven days of the time defendants discovered or could have discovered the grounds for such a challenge. 28 U.S.C. § 1867(a) (1994). Cheese did not comply with this time frame and thus waived his objection to the jury's composition. United States v. Webster, 639 F.2d 174, 180 (4th Cir. 1981). We may review his claim only for plain error. United States v. Olano, 507 U.S. 725, 732-37 (1993).

To receive relief under the plain error standard, a defendant must show the following elements: (1) there was error; (2) the error was

3

plain and obvious under existing law; (3) the error was so prejudicial as to affect the outcome of the proceedings; and (4) the error seriously affects the fairness and integrity of the judicial proceeding. United States v. Castner, 50 F.3d 1267, 1277-78 (4th Cir. 1995). Here, Cheese has failed to establish error. To prove the absence of a fair cross-section of the community in the jury process, a defendant must affirmatively show, among other things, that there is an underrepresentation of a distinct group in the community due to systematic exclusion of the group from the selection process. Duren v. Missouri, 439 U.S. 357, 364 (1979). Cheese has made no attempt to bear his burden of proof in this regard; therefore, he has not established an error and fails to satisfy the Olano standard.[1]

III

Next, Cheese argues that the Government violated 18 U.S.C.A. § 201(c)(2) (West Supp. 1998), which prohibits offers or promises of anything of value to witnesses "for or because of" their testimony. The Government's case against Cheese was based on the testimony of his coconspirators, Dion Cheese, Wendell Cheese, Doug Hill, and Christie Brandon. All of these witnesses made plea agreements with the Government that required their truthful testimony in future proceedings and granted use immunity. For Dion, Wendell, and Hill, the agreements resulted in dismissal of at least one charge. The Government agreed to refrain from seeking sentence enhancement, under 21 U.S.C. § 851 (1994), for Dion and Hill, and to limit Brandon's relevant conduct as to drug quantity for sentencing purposes. Cheese alleges that the district court erred in allowing their testimony because of these agreements. Cheese did not object to this alleged error at trial; therefore, it is evaluated under the Olano standard. See Fed. R. Crim. P. 52(b).

Again, the plain error standard requires proof that there is an error that is clear and obvious under existing law. Castner, 50 F.3d at 1277-78. Cheese relies on two district court opinions, from courts outside

---

[1] The Government notes that jury selection for the United States District Court for the Southern District of West Virginia takes place under a plan approved by the judges of the district in 1993 and reviewed and accepted by the Judicial Council of this circuit.

4

this circuit, to support his claim of error.**2** There is no valid precedent in this or any circuit court to uphold this argument, and a number of circuits have rejected it. United States v. Singleton, ___ F.3d ___, No. 97-3178 (10th Cir. Jan. 8, 1999); United States v. Haese, 162 F.3d 359 (5th Cir. 1998); United States v. Ware, 161 F.3d 414 (6th Cir. 1998). Under the Olano analysis, if there was an error, it is not plain and obvious under existing law because no Supreme Court or circuit court opinion stands to support that position. Therefore, Cheese is entitled to no relief on this claim.

IV

Finally, Cheese argues that the district court failed to make a particularized factual finding as to the amount of drugs to be attributable to him. He also asserts that the district court could not properly adopt the findings in the presentence report, which did not differentiate the amounts attributable to each member of the conspiracy.

In the district court, Cheese objected to being held accountable for the 500 grams to 1.5 kilograms of cocaine base attributed to the conspiracy as a whole. The probation officer responded that Cheese was an active participant throughout the conspiracy, except when he was in jail; that he knew the conspiracy continued while he was in jail and did nothing to terminate his involvement; and that he was present at a drug sale the day after his release from jail and continued selling until the conspiracy was terminated by the arrests of Dion and Hill.

The government must prove the quantity of drugs for which a defendant is accountable at sentencing by a preponderance of the evidence. United States v. Estrada, 42 F.3d 228, 231 (4th Cir. 1994). The district court may rely on information in the presentence report unless the defendant affirmatively shows that the information is unreliable. United States v. Love, 134 F.3d 595, 606 (4th Cir.), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3790 (U.S. June 15, 1998) (No. 97-9085). When the drug quantity is disputed, the district court must make an independent determination of the factual question at sentencing. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). The

_____

**2 United States v. Lowery**, 15 F.Supp.2d 1348 (S.D. Fla. 1998); United States v. Mays, No. 3:97-CR-127 (E.D. Tenn. Sep. 10, 1998).

5

quantity of drugs attributable to defendant is a factual determination that we review for clear error. United States v. Hyppolite, 65 F.3d 1151, 1158 (4th Cir. 1995).

Here, although the Government did not present additional evidence at sentencing, see Gilliam, 987 F.2d at 1013, the district court relied on trial evidence to make findings as to Cheese's role in the conspiracy. Thus, contrary to Cheese's assertion, the district court did make specific findings about the relevant conduct for which Cheese would be held responsible. See U.S. Sentencing Guidelines Manual § 1B1.3 (1997). The court found that the conspirators jointly undertook to secure and distribute cocaine base in the Beckley area, and that Cheese was one of three primary distributors.[3] The district court found that when Wendell Cheese "fell by the wayside," Cheese and Brandon took up the entire distribution until Cheese went to jail. Soon after Cheese was released, Brandon conducted a drug deal in his presence. The district court found this to be part of the criminal activity of the conspiracy. "Thus that just merely continues the jointly undertaken activity and it's reasonably foreseeable that Mr. Troy Cheese would be responsible to the range of cocaine base that was brought into West Virginia, that is between 500 grams and 1000 or 1.5 kilograms."

The district court made an independent resolution of the issue "by separate recitation of its findings as to the disputed matters . . .," United States v. Williams, 152 F.3d 294, 301 (4th Cir. 1998), and found that the Government carried its burden of proving by a preponderance the quantity of drugs attributed to Cheese. The evidence at trial supports the court's conclusion that the entire quantity of drugs was foreseeable to him due to his extensive participation in the conspiracy. These findings are not clearly erroneous.

Cheese is entitled to no relief on the claims before us. We note, however, that the sentence announced by the district court imposed a five-year term of supervised release, as required by statute. 21 U.S.C.A. § 841(b)(1)(A) (West Supp. 1998). The written judgment

_____

[3] Cheese does not dispute the amount of drugs attributed to the conspiracy as a whole, merely the amount of that total for which he is held accountable.

6

imposes a three-year term of supervised release. Not only does the statute require the longer term, but the oral judgment announced by the judge controls in a conflict with the written judgment. <u>United States v. Morse</u>, 344 F.2d 27, 30 (4th Cir. 1965); <u>Rakes v. United States</u>, 309 F.2d 686, 687-88 (4th Cir. 1962). Such a clerical mistake in the judgment may be corrected at any time. Fed. R. Crim. P. 36. Therefore, we affirm his conviction and sentence as announced by the district court. We remand for correction of the clerical error as to the length of supervised release. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and oral argument would not aid the decisional process.

<u>AFFIRMED; REMANDED FOR</u>
<u>CORRECTION OF THE JUDGMENT</u>

7