**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 97-30835

UNITED STATES OF AMERICA,

                                                                        Plaintiff-Appellee,

versus

BILLY LAMPTON, AKA SHORTY; MICHAEL JACKSON, AKA LOW DOWN; CORTNEY
WALKER, AKA MOON, AKA COURTNEY WALKER,

                                                                        Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Louisiana

October 19, 1998

Before POLITZ, Chief Judge, and EMILIO M. GARZA and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Defendants-appellants Billy Lampton, Michael Jackson, and Cortney Walker challenge their

convictions and sentences. For the reasons set forth below, we AFFIRM.

**FACTUAL & PROCEDURAL BACKGROUND**

The F.B.I. began an investigation of the appellants and thirteen of their associates when an

informant revealed that they were distributing large quantities of cocaine, heroin, and marijuana.  On

February 22, 1996, the government obtained an order for the interception of wire communications over a telephone located at Lampton's and Walker's residence. The next day the wire tap began. On April 4, 1996, the government obtained authority to wire tap another of Lampton's residences after the co-defendants discontinued using the first telephone. During the course of the investigation, over 4,000 calls were recorded. One hundred and eleven of these calls would be later played for the jury.

On May 1, 1996, the government obtained a search warrant from a federal magistrate to conduct searches of the co-defendants' homes and vehicles. Numerous firearms, drug paraphernalia, drug ledgers, large amounts of cash, drug laboratory equipment, and quantities of cocaine and marijuana were recovered. The government had also been extensively using cooperating witnesses, one of which directly purchased heroin from Lampton on two occasions while being video and audio taped by the F.B.I.

On September 27, 1996, a nine count superseding indictment was filed against the three appellants and eleven of the co-defendants in which all were charged with conspiracy to distribute quantities of heroin, marijuana, cocaine base, and cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1). Additionally, Lampton was charged separately and individually with distribution of heroin in violation of 21 U.S.C. § 841(1)(1), with use of a firearm in relation to the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)[1], with fraudulent use of a telecommunications instrument in violation of 18 U.S.C. § 1029(a)(5), and with operating a continuing criminal enterprise in violation of 21 U.S.C. § 848.

Trial for appellants, along with two co-defendants, began on February 3, 1997. It ended in a mistrial on February 13, 1997. On March 17, 1997, the second trial began. During the second trial,

---

[1]This charge was voluntarily dismissed by the government prior to trial.

on March 20, the government learned, through another prisoner in custody with Lampton, that Lampton wanted to bribe a specific juror. The prisoner, who became a cooperating witness, led Lampton to believe he could make contact with the juror and that the juror would be amenable to a bribe. Lampton then spoke on the telephone with a person whom he believed was the juror, but was actually an F.B.I. agent recording the conversation. Lampton later pled guilty to obstruction of justice. When the trial court learned of the incident, it became concerned that other jurors may have been the target of Lampton's efforts, and conducted a voir dire of each juror in his chambers with one counsel for the government and one counsel for the defense present (Lampton's counsel). The district court eventually concluded that no jury tampering had occurred, and continued with the trial.

On March 28, 1997, the jury convicted Lampton, Walker and Jackson on all counts charged and remaining in the superseding indictment. One of the other co-defendants was acquitted on one charge but convicted on another. The remaining co-defendant was found not guilty on all charges. On June 11, 1997, the court conducted a hearing on appellants' motion for new trial. The motion was based on the appellants' allegations that the district court's and the government's investigation as to whether Lampton's attempt to bribe a juror tainted the entire jury or prejudiced his co-defendants. The district court denied the motion after hearing from the juror whom Lampton targeted to bribe, the informant who revealed to the government Lampton's intention to bribe a juror, and an Assistant U.S. Attorney who was assigned to investigate and successfully prosecuted Lampton's obstruction of justice offense. None of the defendants were present during this hearing, although their counsel were. In addition, Lampton's counsel left the hearing because he was ill when the court had called a lunch recess. The attorney had been present during the juror-witness' testimony, and part

3

of the informant's testimony, but missed the remainder of the informant's testimony and all of the government attorney's testimony. The district court continued with the hearing, and eventually denied appellants' motion.

On August 7, 1997, the appellants were sentenced. Jackson was sentenced to a term of imprisonment of 360 months, while Lampton and Walker received life sentences. All appellants timely filed notices of appeal.

## DISCUSSION

Defendants-appellants raise several joint challenges to their convictions, as well as several individual challenges. We initially discuss each joint challenge, and then proceed to discuss each defendant-appellant's individual challenges in order of Lampton, Jackson, and Walker.

## I.

Walker and Lampton jointly contend that their absence during the hearing of the new trial motion violated their FED. R. CRIM. P. 43 and constitutional rights. Lampton further argues that his counsel's absence after the lunch recess during the evidentiary hearing also violates his Sixth Amendment right regarding the presence of counsel. We review these legal questions de novo. See, e.g., Associated Metals & Minerals Corp. v. Alexander's Unity MV, 41 F.3d 1007, 1010 (5th Cir. 1995).

We do not agree with either of these arguments. Assuming arguendo that Rule 43 speaks to a defendant's presence at a motion hearing for a new trial, we have interpreted Rule 43 to require the defendants show that their actual presence could have aided in their defense. See United States v. Gradsky, 434 F.2d 880, 883 (5th Cir. 1971). Neither appellant can make this showing. The motion

4

was based on the appellants' allegations that the district court's and the government's investigation as to whether Lampton's attempt to bribe a juror tainted the entire jury or prejudiced his co-defendants. The district court denied the motion after hearing from the juror whom Lampton targeted to bribe, the informant who revealed to the government Lampton's intention to bribe a juror, and an Assistant U.S. Attorney who was assigned to investigate and successfully prosecuted Lampton's obstruction of justice offense. Neither appellant argues there was error in the substance of the evidentiary hearing. Nor were the factual issues addressed at the post-trial motion hearing ones in which the defendants could testify. Neither appellant offers any way, in fact, in which their presence could have assisted in their defense, and we refuse to reverse on this ground.[2]

Nor was their presence required by the Constitution. Under the Due Process Clause, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987). As we already have noted, the appellants' presence was not required for a fair resolution of the issues addressed at the new trial motion hearing. See, e.g., United States v. Sanchez, 917 F.2d 607, 619 (1st Cir. 1990) (where issues addressed at hearing on motion for new trial would not have been affected by input of defendant, due process did not require presence of defendant at hearing).

---

[2]Lampton attempts to distinguish Gradsky on the grounds that in that case, counsel was present to vitiate the absence of the defendant. He thus argues his counsel's partial absence here exacerbates the statutory and constitutional problems associated with his own absence. However, Lampton does not show how the hearing would have been conducted differently had he or his counsel been present. He still cannot how he was harmed in this case. See Gradsky, 434 F.2d at 884 (5th Cir. 1971) (noting that a Rule 43 error can be disregarded if harmless).

We also cannot agree with Lampton's argument that his counsel's decision to leave immediately prior to the lunch recess constitutes reversible error. The district court did not exclude Lampton's counsel from being present; rather, he voluntarily absented himself from the courtroom after advising the court he was ill. Lampton's counsel never asked the proceedings be postponed. All other defendants' counsel stayed and participated throughout the hearing, and Lampton's counsel was present for the testimony of the critical witness, the targeted juror herself. Lampton's counsel did not ask a single question during this proceeding, and in fact indicated the opposite when he observed to the court that his questions would be basically the same as his co-counsel's. While as a general matter counsel should be present to represent a defendant's interest to the court, this case presents the unusual situation in which his absence did not cause his client any harm. Cf. Satterwhite v. Texas, 486 U.S. 249, 258 (1988) (applying harmless error rule in Sixth Amendment context). We therefore reject Lampton's argument to the contrary.

## II.

Walker and Lampton argue that the district court erred when it imposed upon both a mandatory life sentence under 21 U.S.C. § 851(a)(2). The prosecution had sought to enhance defendants' sentences on the theory that they were multiple offenders. As part of the procedure in advancing this request, § 851(a)(1) requires the prosecution to file with the district court a bill of information containing records of prior convictions. However, the next subsection provides that:

> [a]n information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.

6

Id. at § 851(a)(2) (emphasis added). Walker and Lampton jointly argue that § 851(a)(2), and in particular the emphasized language, requires that the prior offenses that the government uses to seek a sentence enhancement have been charged by indictment and not by a bill of information.  In making this argument, appellants rely upon United States v. Collado, 106 F.3d 1097, 1100 (2nd Cir. 1997) in which the Second Circuit held that the language emphasized above was ambiguous because it was unclear whether the word "offense" in it referred to the instant offense or the prior offense. On the one hand, the court found particularly interesting Collado's observation that as all federal felony narcotics prosecutions proceed by indictment, the requirement of § 851(a)(2) that the prosecution be by indictment would be surplusage if it referred to the present federal narcotics prosecution.  See id. at 1103.  The only way to make meaning of the language, Collado argued, was to interpret the word "offense" to refer to prior offenses, and to require prior offenses to have been charged by indictment.  On the other hand, the court observed that this construction had never been adopted by another Circuit, and in fact several other Circuits had found the opposite. In the end, the court saw neither the government's nor the defendant's interpretations as decisive, and decided the statute was ambiguous. As a result of this ambiguity, the Second Circuit held that the rule of lenity applied and that the conviction had to be reversed.

Appellants make the same argument to this Court. They concluded that because the prior offenses upon which the government relied in seeking their increased punishment were charged by information rather than indictment, § 851(a)(2) should have barred the prosecution from filing a bill of information in the present case and thus prevented from seeking a penalty enhancement.  Collado

7

is no longer good law, however. In <u>United States v. Ortiz</u>, 143 F.3d 728, 729 (2nd Cir. 1998), <u>cert. denied, sub nom Nieves v. United States</u>, No. 98-5543, 1998 WL 467715 (Oct. 5, 1998), the Second Circuit overturned <u>Collado</u>. The Second Circuit revised its conclusion in <u>Collado</u> because the government provided new information. In particular, the government informed the court that "at the time § 851(a)(2) was formulated in 1970, federal felony narcotics violations were prosecutable without indictment in the Virgin Islands, and the Panama Canal Zone." <u>Id.</u> at 731. Without this crucial underpinning, the court found that it was "far more sensible in terms of the structure and purpose of the statute that the grand jury guarantee refers to the instant felony offense." We agree with the Second Circuit's reasoning in <u>Oritz</u>, and find the appellants' arguments unpersuasive.

### III.

Both Lampton and Jackson challenge the district court's findings as to their relevant conduct as it related to their activity with illegal drugs.[3] Findings as to relevant conduct are reviewed under a clearly erroneous standard. <u>See, e.g., United States v. Kimbrough</u>, 69 F.3d 723, 733 (5th Cir. 1995). Part of these findings were made with the assistance of the Presentence Report. Appellants claim that the information contained in that report is unreliable hearsay because it was based entirely on interviews with F.B.I. agents who testified about what various actors in this case said, and was

---

[3]Jackson also argues that the district court erred in considering a 1980 sexual battery conviction when determining if he was a career criminal. The district court was right. There was evidence in the record that Jackson was engaged in illegal, relevant conduct during the 1980's. Section 4A1.2(e)(2) of the Sentencing Guidelines says that a prior sentence can be counted for purposes of career criminal status if it was "imposed within ten years of the defendant's commencement of the instant offense." Application Note 8 of that Section clarifies that the phrase "commencement of the instant offense" includes relevant conduct. Thus, the district court was correct in considering Jackson's 1980 sexual battery conviction.

corroborated only by a cooperating witness who later recanted on the stand during sentencing. Information that is relied upon to impose a sentence must have "some minimal indicium of reliability." United States v. Fulbright, 804 F.2d 847, 853 (5th Cir. 1986). At sentencing, the burden is on the government to prove the quality of drugs by a preponderance of the evidence. See United States v. Gaytan, 74 F.3d 545, 558 (5th Cir. 1996), cert. denied, sub nom Gandara-Granillo v. United States, 117 S.Ct. 77 (1996).

After a careful examination of the record, we cannot agree with appellants. First, the F.B.I. agent testified that she was able to verify the cooperating witness's reliability through other witnesses and her own personal observation. Second, a very persuasive argument can be made in this case that the witness who later recanted did so not because of any reckoning with truthfulness, but rather out of an effort to help the defendants avoid being punished for their misdeeds. Looking at the record, we cannot say the district court clearly erred in determining that the false recant did not cast significant doubt on the reliability of the information provided to agents over a year previous. Finally, we emphasize that the Presentence Report was not the only information upon which the district court relied in making its determinations as to the appellants' relevant conduct. It also had two government witnesses during sentencing, in addition to the many witnesses at trial, who testified as to various amounts of narcotics in appellants' possession and their drug dealing activities. It also had several statements made by some of defendants as to their drug activities and amounts of illegal substances. In sum, the record establishes that the government met its burden of establishing this relevant conduct by a preponderance of the evidence.

**IV.**

In addition to his joint challenges, Lampton contends that the district court's procedures when investigating the jury tampering allegations were in error. Specifically, he claims that his counsel's presence in the voir dire proceeding indicated to the jury that he was the one guilty of jury tampering, and that this inference is grounds for mistrial. Paradoxically, he also claims that he should have been included in the proceeding to investigate, and that the failure to do violates FED. R. CRIM. P. 43. Lampton also contends that the trial court's questions to the jurors prejudiced the jury in that they indicted that he was responsible for jury tampering, and should have been grounds for mistrial.

We review issues concerning jurors under an abuse of discretion standard. See United States v. Denman, 100 F.3d 399 (5th Cir. 1996), cert. denied. 117 S.Ct. 1256 (1997). The failure to grant a mistrial is also reviewed for abuse of discretion. See United States v. Ramirez, 963 F.3d693, 700 (5th Cir. 1992). We review appellant's question of law as to whether Rule 43 requires his presence at the jury tampering voir dire of the jurors de novo. See, e.g., United States v. Smith, 31 F.3d 469, 473 (7th Cir. 1994).

We reject each of Lampton's arguments. During the trial, the government learned, through another prisoner in custody with Lampton, that he wanted to bribe a specific juror. The prisoner, who became a cooperating witness, led Lampton to believe he could make contact with the juror and that the juror would be amenable to a bribe. Lampton then spoke on the telephone with a person whom he believed was the juror, but was actually an F.B.I. agent recording the conversation. Lampton later pled guilty to obstruction of justice. When the trial court learned of the incident, it became concerned that other jurors may have been the target of Lampton's efforts, and conducted a voir dire of each juror in his chambers with one counsel for the government and one counsel for the defense present

10

(Lampton's counsel).  None of the questions asked of the jurors suggested in any way that Lampton was involved in the attempted bribery; rather, the district court simply asked whether any party had contacted them. The district court eventually concluded no other juror had been contacted, and continued with the remainder of the trial.

We do not find that the district court abused its discretion in any of the ways Lampton suggests. Our review of the questions asked of the jurors leads us to conclude that the court successfully avoided indicating which party had attempted to make contact with the jury. Moreover, the district court did not abuse its discretion in bringing in an equal number of members from the two sides to participate in the voir dire of the jurors. Finally, assuming arguendo that Rule 43 speaks to a defendant's presence at a voir dire proceeding into charges of jury tampering, appellant has made no showing that his actual presence would have aided in his defense. See United States v. Gradsky, 434 F.2d 880, 883 (5th Cir. 1971). We therefore AFFIRM Lampton's conviction and sentence.

## V.

In addition to his joint challenges discussed earlier, Jackson submits two individual challenges to his conviction. We deal with each in turn.

## A.

Jackson first argues that the district court erred in denying his motion to suppress evidence obtained from a search of his residence and his car. The government obtained a search warrant for Jackson's home. It did not, however, obtain a search warrant for his car. Jackson contends that the

search warrant made for the search of his residence was not supported by probable cause, and that the warrantless search of his car violated his Fourth Amendment rights because no exigent circumstances existed to justify the search. See, e.g., United States v. McKeever, 5 F.3d 863, 864 (5th Cir. 1993). We discuss each search in turn.

**1.**

We employ a two-step process for reviewing a district court's denial of a motion to suppress when a search warrant is involved. See, e.g., United States v. Pena-Rodriguez, 110 F.3d 1120, 1129-1130 (5th Cir. 1997), cert. denied, 118 S.Ct. 72 (1997). First, we determine whether the good faith exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897 (1984), applies. See id. If so, we end our analysis and affirm the district court's decision to deny the motion to suppress. See, e.g., United States v. Satterwhite, 980 F.2d 317, 320 (5th Cir. 1992). If not, we proceed to the second step, in which we "ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." See Pena-Rodriguez, 110 F.3d at 1129-30 (quoting Illinois v. Gates, 462 U.S. 238-39 (1983)).

There is no suggestion that the good faith exception applies in this case, so we proceed directly to the second step. Jackson avers that the judge did not have a substantial basis for concluding that probable cause existed to search his home. In particular, Jackson first argues that much of the affidavit contains uncorroborated testimony from a confidential informant. He next argues that the information contained in the affidavit does not establish a nexus between narcotics and Jackson's residence. We disagree with both contentions. The affidavit set forth that the confidential

12

informant had proven reliable in the past. Moreover, the confidential informant clearly established a nexus between narcotics and Jackson's home by describing that Jackson used soft drink vending machines to distribute illegal drugs and that these vending machines were known by the confidential informant to be kept at Jackson's residence. We thus reject Jackson's argument and find the search warrant of his home to have been justified by probable cause.

**2.**

Jackson also complains that the government's warrantless search of his vehicle violated the Fourth Amendment, and that the evidence obtained from the vehicle's search, specifically a cloned cellular phone, should be suppressed. However, he waived this argument by failing to object in district court to the introduction of the cellular phone on the ground that the search was illegal.[4] See United States v. Chavez-Valencia, 116 F.3d 127, 129 (5th Cir. 1997) (holding that failure to raise motion to suppress evidence at the district court waives argument on appeal), cert. denied, 118 S.Ct. 325 (1997); see also FED. R. CRIM. P. 12(b)(3) (requiring that motions to suppress "must" be raised in pre-trial motion). Jackson makes no showing of cause as to why he should be granted relief from the waiver. See FED. R. CRIM. P. 12(f) (noting that failure to raise 12(b)(3) pre-trial motion "shall

---

[4] Jackson's objection to the cellular phone consisted only of the complaint that the evidence was being introduced improperly to adduce evidence of "other crimes." To the extent that Jackson appeals the district court's decision to overrule this objection and admit the cellular phone, we affirm. The government did not use the cellular phone as an example of another crime committed by Jackson, but rather as "tools of the trade" evidence in support of the charged offense of conspiracy. In particular, the superseding indictment stated that Jackson possessed and utilized a cellular phone in order for he and his co-conspirators to arrange illegal drug transactions.

constitute waiver thereof, but the court for cause shown may grant relief from the waiver"). We therefore decline to reach the merits of his argument.

**B.**

Jackson's second individual basis for appeal is that the district court abused its discretion when it allowed an F.B.I. agent to give expert testimony as to the identification of voices recorded by wire tapping telephone calls to and from co-defendant Lampton. Driving this objection are the complaints that the prosecution admitted it had misidentified some of the parties on these phone calls, and that the F.B.I. used regular agents to make the identifications rather than using the voice identification experts it has on staff. Jackson concludes that the district court could have cured these problems by granting his motion to sever his trial from that of Lampton, and that the district court's refusal to do so was an abuse of discretion.

FED. R. EVID. 901(b)(5) provides that "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, [can be testified to] by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Here, an F.B.I. agent testified that she had heard Jackson's voice in prior personal contact with him. This is sufficient to meet the requirements of Rule 901(b)(5). See, e.g., United States v. Cuesta, 597 F.2d 903, 915 (5th Cir. 1979) (holding Rule 901(b)(5) requires only that the witness have "some familiarity with the voice which he identifies," and that in that case prior conversations with the witnesses were enough to satisfy this Rule). Jackson's argument that there was misidentification simply goes to the

14

evidence's weight, not to admissibility.  As such, the district court did not abuse its discretion.

Jackson's sentence, then, is AFFIRMED.

**VI.**

In addition to his joint challenges discussed earlier, Walker submits three individual

challenges to his conviction. We deal with each in turn.

**A.**

Walker contends that the prosecution impermissibly commented on his failure to testify in

violation of his Fifth Amendment guarantee against a compelled self-incrimination.  He points to a

statement prosecution made in closing arguments:

> Speaking about the government trying to hide things, by the way, ladies and
> gentlemen, the government provided every bit of evidence to the defense, they can
> present whatever they want. They have an opportunity, they don't have to, but they
> have the opportunity.

Following this statement, defense counsel for Walker objected on the ground that Walker was not

obliged to present any evidence.  The trial judge agreed, and reminded the jury that, as he had told

them in voir dire, that the defendants were  not required to prove anything and that the government

must prove their guilt beyond a reasonable doubt.

It is well-settled that "[t]he Fifth Amendment prohibits a trial judge, a prosecutor, or a witness

from commenting upon a defendant's failure to testify in a criminal trial." United States v. Rocha, 916

F.2d 219, 232 (5th Cir. 1990) (citing Griffin v. California, 380 U.S. 609 (1965)).  "The test for

15

determining if a constitutional violation has occurred is whether 'the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Id. (quoting Davis v. United States, 357 F.2d 438, 441 (5th Cir. 1966)). Even if one of these is true, however, we will not reverse unless the improper comment had "a clear effect on the jury." Id. (citing United States v. Rochan, 563 F.2d 1246, 1250 (5th Cir. 1977)).

Even if we assume arguendo that the prosecution's statements were such that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify, there is no need to reverse Walker's conviction. Walker makes no showing that the prosecution's statement had any effect whatsoever on the jury. Moreover, the trial judge specifically instructed the jury, immediately following the prosecutor's remarks, that the burden of proof rested on the government and that the defense had no such equivalent burden. Such an instruction cures any alleged harm resulting from the prosecutor's remarks. See, e.g., United States v. Montoya-Ortiz, 7 F.3d 1171, 1179 (5th Cir. 1993) (holding that the instruction "[t]he defendant has no burden at all, and the jury will recognize that. The defendant does not have to prove his innocence . . ." cured the prosecution's remark that was alleged to have violated the Fifth Amendment).

**B.**

Walker next contends that the government did not prove beyond a reasonable doubt that he had two prior felony convictions in state court. The district court used the two convictions as the basis to enhance Walker's sentence as a multiple offender pursuant to 21 U.S.C. § 851(c)(1).

16

Walker's objection to the government's evidence is that the government did not prove beyond a reasonable doubt that the person twice convicted in state court was Walker.

We disagree. The government entered: (1) certified copies of Walker's two state arrest registers, corresponding to his two state convictions; (2) fingerprint exemplars from both state arrest registers; (3) certified copies of both state convictions; (4) and Walker's fingerprint exemplars from the instant offense maintained by the U.S. Marshal Service. The prosecution also called a supervisor from the state probation and parole office who testified that the birthdates listed for both state convictions contained in her official file for Walker matched the date of birth recorded with the U.S. Marshal Service for Walker. The prosecution also submitted the expert testimony of a police fingerprint expert, who testified that the arrestee's fingerprints on the two state arrest registers matched Walker's federal fingerprint card. We find that this evidence established beyond a reasonable doubt that the two prior state convictions used to enhance Walker's sentence were in fact his convictions and not that of someone else.

## C.

Finally, Walker contends that the district court considered his protected plea negotiation statements, made in connection with an aborted plea negotiation, when computing his sentence. We cannot agree. The district court specifically stated that Walker's sentence was not based on any information obtained during plea negotiations but rather was based on the evidence adduced at trial and the testimony of witnesses called during the sentencing hearing. Therefore, the district court committed no error. Walker's conviction and sentence is thus AFFIRMED.

17

**CONCLUSION**

For the foregoing reasons, we AFFIRM each appellants' conviction and sentence.