# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit

_____

### No. 97-60491
_____

### UNITED STATES OF AMERICA,

**Plaintiff-Appellee,**

### VERSUS

### BRAXTON TOWNSEND,

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(3:97-CR-25WN)

_____

June 24, 1999

Before KING, Chief Judge, REYNALDO G. GARZA, and JOLLY, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge [1]:

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 1997, the defendant-appellant, Braxton Townsend ("Townsend"), was charged alone in a five-count indictment. Count I charged that on November 14, 1996, Townsend possessed with intent to distribute approximately five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Count II charged that on November 17, 1996, Townsend possessed with intent to distribute four ounces of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Count III charged Townsend with carrying a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1). Count IV charged Townsend with

_____

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

conspiring to commit money laundering with drug trafficking proceeds between August 23, 1993 and August 2, 1994, in violation of 18 U.S.C. § 1956(h). Count V charged Townsend with causing a financial institution to fail to file a Currency Transaction Report for a currency transaction in excess of $10,000, in violation of 31 U.S.C. §§ 5313 and 5324(a)(1). The following evidence was presented at trial.

In August of 1993, Townsend began building a home in Lena, Mississippi. Prior to the commencement of the building process, Townsend made arrangements with his cousin, Diane Kincaid ("Kincaid"), to open two accounts at Deposit Guaranty National Bank. Kincaid opened a checking account and a savings account under her name and the name of Townsend's sister, Willie DuPlasser ("DuPlasser"). The purpose of opening the two bank accounts was to permit Kincaid to write checks for expenses related to the construction of Townsend's home in Lena. At the time that the construction began, Townsend lived in Milwaukee, Wisconsin and Kincaid lived in the Lena, Mississippi area.

The arrangement between Townsend and Kincaid encompassed the following: when Townsend wanted Kincaid to make a deposit, he would travel to Mississippi and bring her the cash in a bank bag. Once Townsend had moved to Mississippi and before the construction of the home was completed, Kincaid would pick up the money from Townsend. Townsend would often give Kincaid money in excess of $10,000. Townsend instructed Kincaid, however, that when making bank deposits she should keep each deposit under $10,000. Townsend also told Kincaid to make the deposits at different branches of the bank and to vary the deposits between the savings and checking accounts. Due to Townsend's illiteracy, Kincaid handled all of Townsend's legal and financial matters until the completion of his home in September of 1994.

During the construction process, Townsend would place money in a safe deposit box to pay for the cost of building his home. The contractor testified at trial that he presented receipts for the building materials to Kincaid, who, in turn, would pay him. The contractor explained that the house measured approximately 8,000 square feet and that Townsend spent approximately

2

$380,000 building it.

The Government produced evidence that Townsend had not filed tax returns for the 1990, 1993 and 1994 tax years. In 1991, Townsend failed to report any income and his wife, Lora's reported income was $6,077. In 1992, the Townsends reported an income of $7,000.

An agent with the Internal Revenue Service ("IRS") testified that as early as 1989, Townsend had been receiving food stamps and other governmental assistance from Illinois, Wisconsin and Mississippi. The IRS agent stated that it was her professional opinion that the funds used to build the house came from drug activities. The agent explained that in the course of her investigation, she had checked with authorities and determined that there were open investigations on Townsend for criminal activity involving drugs in other states. The agent stated that her investigation allowed her to gather intelligence information that showed that Townsend had been previously involved in drug activities, that he had no legal sources of income, and that he had large sums of money that legitimately could not be accounted for.

Acting on the information from the IRS, officers with the Mississippi Bureau of Narcotics ("MBN") arranged to make a controlled buy of cocaine from Townsend. The officers used two confidential informants, Sheila Jones ("Jones")[2] and Robert Pollard ("Pollard"), to execute the controlled buy. On the evening of November 14, 1996, Jones, Pollard, and an undercover officer went to Townsend's home in Lena to make the controlled buy. Jones was outfitted with a body transmitter. Upon knocking on his door, Townsend told Jones not to enter his home and directed her to "the corner house," an adjacent building on his property.

Jones entered the "corner house" and Townsend followed. Jones purchased $200 worth of crack cocaine from Townsend after he retrieved it from a soap box located in a smaller house on Townsend's property. Jones paid Townsend with two marked $100 bills.[3] The agent and

---

[2]In exchange for her participation and testimony, Jones was paid $1,000 and received additional funds to pay for her living expenses.

[3]The two bills had been given to Jones by a narcotics officer who had recorded the serial numbers of the bills used in the controlled buy.

Pollard remained in the car during the drug transaction.

Pollard testified that Townsend told Jones not to come to his house at that time of night and that she should go to the "little house." Pollard, then drove the car to the "little house." He explained that Townsend came out of the door with a soap box and then asked Jones who was inside the car. Jones told Townsend that Pollard was her uncle and that the undercover officer was a friend. Townsend approached Pollard, and Pollard asked Townsend "whether he was holding."[4] Townsend replied that "he had some" and that Jones "had to come and get it." Pollard stated that Jones and Townsend went inside the "small house" and into the front room. Pollard testified that Jones received the crack cocaine and returned to the car.

Officer Louis Hawkins ("Hawkins") testified that he participated in the controlled buy. He and Sergeant Faron Gardner provided surveillance for Jones, Pollard and the undercover officer as they executed the controlled buy. Hawkins explained that he overheard the conversation between Townsend and Jones wherein Jones requested that Townsend sell her $200 worth of crack cocaine. Through inadvertence, no tape recording of the conversation was made.

Officer Jimmy Nichols ("Nichols") also testified that he overheard the conversation during the controlled buy and identified Townsend as the individual that he heard selling Jones the crack cocaine. Nichols explained that he was positive that it was Townsend talking on the wire because Townsend had a distinct voice.

Based upon the probable cause resulting from the controlled buy, officers of the MBN obtained a warrant to search Townsend's property. On the morning of November 17, 1996, the search transpired. In the course of the search, a box containing money was discovered in the downstairs master bedroom closet of Townsend's home.[5] MBN agents found a total of approximately four ounces of crack cocaine at Townsend's residence. Approximately three to

[4]By asking Townsend "whether he was holding," Pollard meant to ascertain whether Townsend had drugs.

[5]The agents found over $5,000 in cash during the search of Townsend's home, included in this amount was one of the marked $100 bills used in the controlled buy.

4

four grams of cocaine were found in a coat pocket in the upstairs master bedroom closet. Cocaine was also seized from the trunk of a motorcycle and in a van[6] parked inside the garage. The van and the motorcycle were identified as belonging to Townsend. An additional amount of cocaine was found in a "fake battery" in the storeroom located separately from Townsend's main residence. The key ring that contained the key to the storeroom was identified by Townsend as belonging to him.

The MBN agents also found forty-one guns. These included nineteen handguns and numerous shotguns and rifles. Agents also discovered electronic scales, packing material, and cutting agents in Townsend's storeroom.

At the time that the search warrant was executed, Townsend was in the downstairs master bedroom in bed with his wife and child. Officer Nichols, who first encountered Townsend in the master bedroom, discovered a .32 caliber Derringer handgun in the back pocket of Townsend's jeans. Nichols testified that because Townsend was in his underwear and because a female officer was about to enter the room, he asked Townsend if he wanted to put on his jeans. Townsend's jeans were lying on a hot tub directly across the room from where Townsend and his wife had been sleeping. Nichols, when picking up the jeans from the hot tub, found the pants to be unusually heavy. Nichols reached into the back pocket of the jeans and discovered the handgun. Nichols asked Townsend if the gun was loaded. Townsend stated that it was and that it was used for protection. The gun contained two rounds of ammunition.

Townsend's wife, Lora, testified that her husband had won the Illinois Lottery on several occasions and that the total amount of the winnings was $250,000. She recalled that in 1987 or 1988, Townsend had won $22,500. However, Lora testified later that at that time she and Townsend used the money to satisfy their drug addiction.

Lora also stated that the firearm found on the hot tub belonged to Kita Hoye and that

---

[6]A portion of the crack cocaine that was found was discovered in a Zest soap box. The box was found inside a Crown Royal bag underneath the driver's seat of the van. The cocaine was inside small medicine bottles with Townsend's name on the bottles.

Lora kept it there for her protection. Lora denied that the handgun was in Townsend's pants. Lora stated that she had placed the gun on the hot tub and that Townsend's pants had been laid over the weapon. She testified that it was impossible to lie in bed and reach the handgun on the hot tub. Lora also denied that the cocaine found in the coat pocket belonged to Townsend and stated that the guns belonged to friends who were storing them in their home.

The Government presented documentary evidence from the Illinois Department of Lottery establishing that from 1985 to 1997, no prizes in excess of $600 had been awarded to Townsend, his wife, or DuPlasser. Townsend testified on his own behalf.

The jury found Townsend guilty on all five counts of the indictment. Townsend was sentenced to 130 months imprisonment on Counts I, II, IV and V. He was also sentenced to a consecutive 60 months imprisonment on Count III, which charged Townsend with carrying a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1). This appeal followed.

## II. DISCUSSION

### A. Motion for Judgment of Acquittal

Standard of Review

This Court reviews the denial of a motion for a judgment of acquittal *de novo*. *United States v. De Leon*, 170 F.3d 494, 496 (5th Cir. 1999). We "will affirm the verdict if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict." *United States v. Myers*, 104 F.3d 76, 78 (5th Cir.), *cert. denied*, 520 U.S. 1218 (1997). The evidence need not exclude every possible theory of innocence or be wholly consistent with every conclusion except

6

that of guilt. *Id.* (citing *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir.), *cert. denied,* 517 U.S. 1228 (1996)). In addition, "[i]t is not for the court, upon motion for judgment of acquittal, to weigh the evidence or assess the credibility of witnesses." *United States v. Rasco*, 123 F.3d 222, 228 (5th Cir. 1997), *cert. denied,* 118 S.Ct. 868 (1998)(citing *United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir.), *cert. denied*, 506 U.S. 918 (1992)).

Analysis

The district court denied Townsend's motion for new trial or judgment of acquittal on Count III, carrying a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1). It found that the evidence presented in support of each of the five counts was sufficient for a rational trier of fact to reach the conclusion that Townsend was guilty of the crimes charged in each count.

Townsend contends that the trial court erred in denying his motion for judgment of acquittal. He maintains that there is insufficient evidence to support his § 924(c)(1) conviction. Townsend argues that this Circuit's jurisprudence, in a non-vehicle context, requires both that the weapon be moved in some fashion and that it be within arms reach during the commission of the drug offense for it to constitute a violation under the "carry" prong of § 924(c)(1). In addition, Townsend asserts that the Government failed to produce evidence that he moved the firearm or that it was within arm's reach at the time that the search warrant was executed.

The Government contends that there is ample evidence to support Townsend's § 924(c)(1) conviction. The Government argues that the handgun was found in the pocket of Townsend's pants, which were lying on a hot tub right next to Townsend's bed. Therefore, the Government asserts that based upon these facts, a jury could reasonably infer that Townsend was exercising dominion and control over the firearm in his pants pocket. The Government notes that Townsend's wife testified that the hot tub was "right across" from the bed. Thus, the Government maintains that a jury could conclude that the handgun was within reach of Townsend

7

as he laid on the bed on the morning of the search.  The Government states that all of these facts support the verdict that Townsend "carried" a firearm during and in relation to his drug trafficking offense.  This Court, however, does not agree with the Government's contentions.

18 U.S.C. § 924(c)(1) provides, in relevant part:

Whoever, during and in relation to any crime of violence or drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.

Thus, to support a conviction pursuant to § 924(c)(1) the defendant is required to have: (1) used or carried a firearm, (2) during and in relation to a drug-trafficking offense.  *See* § 924(c)(1).  Townsend was charged and convicted only with "carrying" not with "using," a firearm during a drug trafficking crime.  Therefore, *Bailey v. United States*, 516 U.S. 137 (1995), has no effect on our analysis of the carrying facet of § 924(c)(1).[7]   *United States  v. Schmalzried*, 152 F.3d 354, 356  (5th Cir. 1998).

The courts discussing the definitions of "use" or "carrying" "have generally agreed that 'carrying' is to be interpreted narrowly, while 'use' is interpreted more broadly."  *United States v. Pineda-Ortuno*, 952 F.2d 98, 103 (5th Cir.), *cert. denied sub nom. Ramirez-Carranza,* 504 U.S. 928 (1992).  Furthermore, the word "carry" is to be given its ordinary meaning.  *United States v. Rivas*, 85 F.3d 193, 195 (5th Cir), *cert. denied*, 519 U.S. 1033 (1996).  "Carry" "means more than mere possession of a firearm during and in relation to a drug trafficking crime."  *United States v. Hall*, 110 F.3d 1155, 1161 (5th Cir. 1997).   In a non-vehicle context, "carrying" requires that the weapon be moved in some fashion and that it be within the defendant's reach (readily accessible) during the commission of and in relation to the predicate offense.  *United*

---

[7]The *Bailey* decision affected only the definition of "use" under § 924(c)(1).  The Court  defined "use" as "active employment of the firearm." *Bailey*, 516 U.S. at 144.  The Court stated that "use" includes the acts of "brandishing, displaying, bartering, striking with, and firing or attempting to fire a firearm, as well as the making of a reference to a firearm."  *Id.* at 506.  Thus, the *Bailey* decision does not change the understanding of criminal liability for "carrying" a firearm under § 924(c). *United Stated v. Ramos-Rodriguez*, 136 F.3d 465, 468 (5th Cir. 1998).

*States v. Wainuskis*, 138 F.3d 183, 187 (5th Cir. 1998).

In determining whether there was sufficient evidence to support Townsend's conviction under the "carry" prong of § 924(c)(1), we must first consider whether Townsend moved the firearm. Officer Nichols testified that the handgun was found in the back pocket of Townsend's pants on the morning that the agents executed the search warrant. Townsend's wife, however, contradicted this testimony. She testified that she put the gun on the hot tub for her personal protection and that Townsend's pants had been laid over the weapon. We note that the jury was free to ascertain the credibility of the witness and thus was free to disbelieve the testimony presented by Townsend's wife. In addition, we note that the handgun was discovered inside the pocket of Townsend's pants, which were lying on a hot tub in the master bedroom, occupied by only Townsend, his wife and young child. Thus, we find that there was sufficient evidence to allow the jury to reasonably infer that Townsend had moved the firearm by placing it inside the pocket of his pants.

To properly convict Townsend on the "carry" prong of § 924(c)(1), the prosecution must show that the handgun was within arm's reach of the defendant during the commission of the drug offense. *Wainuskis*, 138 F.3d at 187. We find that the firearm was not within arm's reach of Townsend when the agents conducted the search of his home. The officers first encountered Townsend while he was asleep in his bed with his wife and child. Moreover, Townsend's wife testified that the hot tub, on which the jeans containing the gun were discovered, was located "right across" from the bed. Unlike the Government's interpretation, we find that this does not show that the handgun was within ready reach of Townsend while he was lying in his bed. As Townsend notes "right across" pertains to a direction or a distance. If it is interpreted as distance what distance does it illustrate? Moreover, Townsend's wife explained at trial that one could not "lie in bed and reach the gun" on the hot tub. When viewing the evidence, we find that it is insufficient to allow a reasonable trier of fact to conclude that the handgun was within arm's reach of Townsend when that the search was conducted.

9

Even if this Court concluded that the firearm was within arm's reach of Townsend when the search transpired, in order to support a conviction under the "carry" prong of § 924(c)(1), the Government must still prove that Townsend carried the handgun "during and in relation to a drug trafficking crime." The phrase "in relation to" is expansive and requires only that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of an accident or coincidence. *Smith v. United States*, 508 U.S. 223, 237-38 (1993). The firearm must at least facilitate or have the potential of facilitating the drug trafficking offense. *United States v. Tolliver*, 116 F.3d 120, 126 (5th Cir.), *cert. denied sub nom. Sterling v. United States*, 118 S.Ct. 324 (1997). Furthermore, the "in relation to" requirement places an obligation on the prosecution to show not only that the firearm itself had some purpose or effect with respect to the drug offense, but that the carrying of the weapon had such a purpose or effect. *Schmalzried*, 152 F.3d at 357.

We find that the record in this case is insufficient to support the inference that by its carriage, the gun had a "purpose and effect" with respect to Townsend's possession with intent to distribute crack cocaine. The location of the gun, whether Townsend placed it in his pants or whether Townsend "carried" the gun into his house, cannot be determined. Even assuming that Townsend moved the gun within the house by placing it in the pocket of his pants, we cannot ascertain the location of the firearm immediately before he placed it in his pants or where the pants were situated when he placed the gun in them.

We also conclude that there was no evidence that demonstrated that Townsend was engaged in any substantive drug offense when he inserted the gun into the pocket of his pants or that the placement of the gun in his pocket had the purpose or effect with respect to the drug offense. Clearly, the only documented instance of narcotics trafficking by Townsend occurred at the controlled buy on November 14, 1996. The search of Townsend's residence, which resulted in the discovery of the firearm, transpired three days later. In addition, although drugs and drugs paraphernalia were found in the storeroom, in the garage, and in the upstairs closet, no drugs

10

were found in the master bedroom where Townsend and the handgun were found. Although Townsend stated that the gun was used for protection, he never stated that it was used to protect the drugs. Therefore, we hold that the Government failed to prove that Townsend carried the firearm "during and in relation to a drug-trafficking crime" in order to support a conviction under the "carry" prong of § 924(c)(1).

Accordingly, Townsend's conviction solely in regards to Count III and the 60 month sentence imposed by the district court is hereby REVERSED and VACATED.

### B. Testimony Regarding the Presence of Firearms

### Standard of Review

This Court reviews the admission of evidence for abuse of discretion. *De Leon*, 170 F.3d at 496. In a criminal case, however, review of the trial court's evidentiary rulings are necessarily heightened. *United States v. Hernandez-Guevara*, 162 F.3d 863, 869 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 1375 (1999). Furthermore, if we find an abuse of discretion in the admission or exclusion of evidence, we review the error under the harmless error doctrine. *United States v. Haese*, 162 F.3d 359, 364 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 1795 (1999). We must affirm evidentiary rulings unless they affect a substantial right of the complaining party. *Hernandez-Guevara*, 162 F.3d at 869 (citing *United States v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989)).

### Analysis

Townsend contends that the district court erred in allowing testimony regarding the forty-one firearms found in his home that were not alleged in his indictment. Prior to trial, Townsend filed a Motion *In Limine* seeking to prohibit the introduction of the firearms into evidence. The district court denied the motion.

11

At trial, Townsend renewed his objection, which was overruled. The district court permitted the Government to introduce photographs of all the weapons found on Townsend's property. Although the district court made mention of the fact that the Government considered the evidence to be intrinsic evidence, the trial court ultimately based its admissibility determination on the finding that the weapons were extrinsic evidence and relevant to Townsend's intent to commit the drug trafficking crimes charged in the indictment. As part of the charge to the jury, the district court gave a Federal Rule of Evidence 404(b) limiting instruction.

Townsend does not contend that the district court erred in concluding that the evidence was extrinsic in nature, but asserts that the evidence was inadmissible. Townsend notes that the weapons in question were either located in a locked and secured gun storage room or in one of his vehicles. Accordingly, he maintains that they were extrinsic to the crime with which he was charged. In addition, Townsend argues that because the firearms were extrinsic evidence, testimony regarding them was governed by Federal Rule of Evidence 404(b). Townsend states that the Government offered this evidence for nothing other than to establish his character. Furthermore, Townsend insists that the admission of the firearms evidence was unfairly prejudicial.

The Government argues that the evidence of the weapons found in Townsend's home is intrinsic proof of the crimes of possession with intent to distribute crack cocaine and carrying a gun during and in relation to a drug trafficking offense. Therefore, it maintains that such evidence is admissible to allow a jury to evaluate all of the circumstances under which the defendant acted. Furthermore, the Government asserts that even if the weapons in question are considered extrinsic evidence, subject to Federal Rule of Evidence 404(b), they are admissible because they illustrate Townsend's intent to distribute crack cocaine and their probative value is not substantially outweighed by their prejudicial effect.

The proper test to apply in determining the admissibility of other acts depends upon whether the evidence in question is "intrinsic" or "extrinsic" evidence. *United States v. Williams*,

900 F.2d 823, 825 (5th Cir. 1990). Evidence of extraneous acts is "'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or other acts were necessary preliminaries to the crime charged." *Id.* (citing *United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982)). Intrinsic evidence is admissible to allow the jury to evaluate all of the circumstances under which the defendant acted. *United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992), *cert. denied*, 507 U.S. 911 (1993)(citing *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989)). Federal Rule of Evidence 404(b) does not apply to intrinsic evidence. *United States. v. Powers*, 168 F.3d 741 (5th Cir. 1999).

We find that the evidence of the weapons was not intrinsic evidence. Clearly, this evidence was not inextricably intertwined with the crimes charged, nor were these firearms part of a single criminal episode or preliminaries to the crimes charged. Therefore, we conclude that the district court was correct in concluding that the evidence was extrinsic in nature and thus we must consider its admissibility under Rule 404(b).

Federal Rule of Evidence 404(b) provides, in relevant part:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

In interpreting Rule 404(b), we have articulated that the rule calls for a two-step analysis. "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *Hernandez-Guevara*, 162 F.3d at 870 (5th Cir. 1998)(citing *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978), *cert. denied*, 440 U.S. 920 (1979)).

We first turn to the question of whether the evidence of the forty-one firearms is relevant to an issue other than Townsend's character. Prior to doing so, however, we must determine whether the Government offered sufficient proof demonstrating that Townsend committed the

13

acts offered as proof under Rule 404. *Id.* at 913. If the proof is insufficient, then the judge must exclude the evidence due to irrelevancy. *Id.* It is undisputed that Townsend was in possession of a small arsenal of firearms. Under our jurisprudence, that fact is relevant to illustrate his intent to participate in a drug trafficking offense. *United States v. Beverly*, 921 F.2d 559, 563 (5th Cir.), *cert. denied*, 501 U.S. 1237 (1991).

Finally, we must determine whether the probative value of the firearms is substantially outweighed by their undue prejudicial effect. This Court has recognized that possession of firearms is highly probative in proving criminal intent, since firearms have been recognized as "tools of the trade" of those engaged in illegal drug activities. *United States v. Martinez*, 808 F.2d 1050, 1057 (5th Cir.), *cert. denied*, 481 U.S. 1032 (1987). In addition, we note that the probative value of Rule 404(b) evidence "is not an absolute; it must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference." *Beechum*, 582 F.2d at 914. Although Sheila Jones' testimony shed considerable light on Townsend's intent, her testimony was highly contradicted by Townsend at trial[8]. Under these circumstances the probative value of the firearm takes on added significance. We therefore find that the evidence of the firearms was not unduly prejudicial. Furthermore, the weapons themselves were not evidence of violent acts nor were they introduced at trial to prove such violent activities. In addition, although Townsend was in possession of a substantial cache of firearms, the ownership of such an arsenal does not appear as abhorrent as the act of selling crack cocaine. Therefore, we hold that the district court did not abuse its discretion in admitting evidence of the firearms seized from Townsend's residence. Moreover, any prejudicial effect was minimized by the district court's limiting instruction. *United States. v. Buchanan*, 70 F.3d 818, 831-32 (5th Cir. 1995), *cert. denied*, 517 U.S. 1114 (1996).

## *C. Pretrial Release*

---

[8]Jones testified that Townsend in fact sold cocaine to her.

Standard of Review

Pretrial detention decisions involve mixed questions of fact and law, *see United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir.), *cert. denied*, 469 U.S. 824 (1984), and we therefore review them with "an intermediate level of scrutiny, more rigorous than the abuse-of-discretion or clear-error standards, but stopping short of plenary or de novo review." *United States v. Tortora*, 922 F.2d 880, 883 (1st Cir. 1990). A trial court's pretrial detention order must be upheld if it is supported by the proceedings in that court. *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

Analysis

Townsend urges this Court to reverse his convictions based upon the district court's denial of his request for pretrial release on bond. Townsend contends that the lower court's decision to deny him pretrial release was erroneous and resulted in severe prejudice to his defense. Townsend concedes that pursuant to 18 U.S.C. § 3142 there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the accused and the community's safety if the court finds there is probable cause to believe that he committed an offense for which a maximum term of imprisonment of ten years or more is prescribed. Townsend asserts, however, that he satisfied that burden by showing that he had significant ties to the community. Townsend also maintains that his illiteracy and incarceration before trial prevented him from meaningfully participating in his defense.

We find that Townsend's contentions are without merit. Townsend claims that his pretrial incarceration has unfairly prejudiced his defense. Townsend, however, does not state what evidence or arguments he was prohibited from advancing. Moreover, he fails to explain an specific instance where his illiteracy and pretrial incarceration prevented him from participating in his defense. Therefore, we hold that Townsend is not entitled to a reversal of his convictions based upon the district court's denial of his request for pretrial release on bond.

15

Standard of Review

Where the party challenging the trial court's evidentiary ruling makes a timely objection, we review under an abuse of discretion standard. *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998).

Analysis

Townsend argues that the district court abused its discretion under Federal Rule of Evidence 901 in allowing Officer Hawkins to identify his voice as one of the voices that he heard over the radio transmitter on the night of the controlled buy.

Federal Rule of Evidence Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." With respect to voice identification, the rule allows authentication "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." FED. R. EVID. 901(b)(5). Furthermore, Rule 901(b)(5) provides that "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, [can be testified to] by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." *See United States v. Lampton*, 158 F.3d 251, 259 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 1124 (1999). Rule 901 requires only that the witness have "some familiarity with the voice he identifies" and that given such familiarity, an argument of misidentification goes to the evidence's weight and not its admissibility. *Id.*

Townsend asserts that Officer Hawkins had not heard Townsend's voice prior to the evening of the radio transmitted drug transaction, but later became familiar with it through interviews that were conducted with Townsend after his arrest. Townsend contends that because

16

the drug transaction was not recorded and took place approximately two months prior to Officer Hawkins becoming familiar with his voice, the officer's identification of his voice was inadmissible. This court finds that Townsend's argument is meritless.

We hold that the district court did not abuse its discretion in allowing Officer Hawkins to testify that the voice he heard negotiating a drug transaction over the radio transmitter was that of Townsend. Officer Hawkins' opinion, that the voice he heard through a mechanical or electrical transmission was Townsend's, was based upon hearing Townsend's voice after his arrest. We find that this satisfies Rule 901's "at any time" requirement. Furthermore, Officer Hawkins' opinion was also founded by his face-to-face conversations with Townsend. This clearly allowed Hawkins to connect the voice heard on the night of the drug transaction with that of Townsend's. Therefore, we conclude that the district court's decision to admit Officer Hawkins' testimony was not an abuse of discretion and was within the parameters provided by Rule 901.

### E. 18 U.S.C. § 201(c)(2)

Standard of Review

Townsend failed to raise the argument that the Government violated 18 U.S.C. § 201(c)(2) in offering leniency, living expenses, and cash in exchange for testimony during the lower court proceedings. It is firmly established that issues not presented to the trial court are waived unless the lower court's action constitutes plain error. *United States v. Mann*, 161 F.3d 840, 867 n. 91 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 1766 (1999). Federal Rule of Criminal Procedure 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." FED R. CRIM P. 52(b). Under this review, we must determine whether: (1) there was an error; (2) that error is plain; and (3) that error affected substantial rights. *See Jones v. United States,* No. 97-9361, 1999 WL 401258 at * 9 (U.S. Jun 21, 1999) (citing *Johnson v. United States*, 520 U.S. 461, 465-66 (1997); *United*

17

*States v. Olano*, 507 U.S. 725, 731 (1993)); *see also Haese*, 162 F.3d at 366. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. *Olano*, 507 U.S. at 734. This Court, however, "should not exercise that discretion unless the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Gaudin*, 515 U.S. 506, 527 (1995)(citing *Olano*, 507 U.S. at 732)).

Analysis

Title 18, United States Code § 201(c)(2) prohibits the giving, offering or promising anything of value to a witness for or because of his testimony. Townsend argues that the Government violated section 201(c)(2) by promising Kincaid, Townsend's cousin, leniency and Jones, a confidential informant, living expenses and cash in exchange for their testimony. Townsend's argument is flawed.

It is blatantly apparent that this Circuit has rejected Townsend's argument that the Government cannot offer an accomplice leniency in exchange for her trial testimony. *See Haese*, 162 F.3d at 366-67. In *Haese* we stated,

> it is evident to this Court that Congress did not intend for section 201(c)(2) to be used when prosecutors offer lenity for a witness' truthful testimony. To interpret section 201(c)(2) in any other way would apply shackles to the government in its pursuit to enforce the law.

*Id.* at 367. Furthermore, we noted that the "essential 'right on the part of the prosecutor to make promises of leniency in exchange for testimony is as old as the institution of the criminal trial.'" *Id.* (citation omitted). Clearly, the district court did not commit plain error.

Townsend also contends that the Government may not give a confidential informant living expenses and cash in return for her testimony. However, after reviewing the record, we find that Jones received living expenses and cash in exchange for her participation in the controlled buy and not in consideration to testify at trial. We note that in applying section 201(c)(2) as to bar the Government from paying living expenses and cash to confidential informants in return for their testimony would be ludicrous because it would criminalize such an act even though it is

18

authorized under the Witness Relocation and Protection Act.[9]   Nevertheless, even if the

Government paid Jones for her testimony, we hold that no plain error was committed.   In *United

States v. Cervantes-Pacheco*, 826 F.2d 310 (5th Cir.1987), *cert. denied sub nom. Nelson v.

United States*, 484 U.S. 1026 (1988), we held that because "[a] witness. . . who is paid a fee for

his services has less inducement to lie than witnesses who testify with promises of reduced

sentences," it would make no sense to exclude testimony of a compensated witness "yet allow the

testimony of informants. . . who are testifying with the expectation of receiving reduced

sentences." *Id.*  at 315.  Furthermore we have held that the "compensated witness and the witness

promised a reduced sentence are indistinguishable in principle and should be dealt with in the

same way." *Id.*  Therefore, we conclude that the district court did not commit plain error and

Townsend's request for relief is hereby denied.


### F.  Sufficiency of the Evidence


Standard of Review

When the sufficiency of the evidence is challenged on appeal, this Court reviews the

evidence and all the reasonable inferences which flow therefrom in the light most favorable to the

verdict.  *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).   The conviction must be

affirmed if any rational trier of fact could have found the essential elements of the offense beyond

a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979);  *United States v. Crow*, 164

F.3d 229, 237 (5th Cir. 1999), *cert. denied*, 1999 WL 315415 (U.S. June 7, 1999).  This Circuit

has noted that in applying the sufficiency of the evidence standard, we must view the evidence in

light most favorable to the Government. *Id.* at 237.  In addition, "It is not necessary that the

evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every

---

[9]The Witness Relocation and Protection Act authorizes the Attorney General to give witnesses things of value including housing, living expenses and other services in exchange for their agreement to cooperate and provide testimony.  18 U.S.C. § 3521(b)(1), (d)(1)(A).

conclusion except that of guilt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), *aff'd on other grounds,* 462 U.S. 356 (1983). This Court is not charged with weighing the evidence or gauging the credibility of the witnesses. *United States v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 1998). The standard of review is the same whether the evidence is direct or circumstantial. *Scott*, 159 F.3d at 920.

Analysis

Townsend contends that the evidence at trial was insufficient to support his conviction for conspiracy to launder money under 18 U.S.C. § 1956(h). We do not agree with Townsend's assertion. To establish a violation of section 1956 (a)(1), the Government must prove that Townsend: "(1) knowingly conducted a financial transaction (2) that involved the proceeds of an unlawful activity (3) with the intent to promote or further that unlawful activity." *United States v. Thomas*, 12 F.3d 1350, 1360 (5th Cir. 1994)(citing *United States v. Salazar*, 958 F.2d 1285, 1293 (5th Cir.), *cert. denied*, 506 U.S. 863 (1992)). Section 1956(h) states: "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

After reviewing the record, the parties briefs and hearing oral argument, we find that the evidence presented at trial is sufficient to support Townsend's conviction for conspiracy to commit money laundering. The Government showed that Townsend's only legitimate sources of income were food stamps and disability payments. The fact that Townsend routinely provided his cousin with large sums of cash for deposit into bank accounts, that he had purchased a home worth approximately $300,000 without substantial evidence of any legitimate income, that he sold crack cocaine to Jones on November 14, 1996, and that four ounces more of crack cocaine were discovered on his property, is sufficient to support his conviction.

### III. CONCLUSION

For the aforementioned reasons,  Townsend's conviction regarding Count III and the 60 month sentence imposed by the district court is hereby REVERSED and VACATED. Furthermore, the district court is hereby AFFIRMED in all other respects.